CREST PONTIAC CADILLAC, INC., ET AL. *v.* NANCY HADLEY, COMMISSIONER OF MOTOR VEHICLES, ET AL.
(15502)
(15503)

Borden, Katz, Palmer, McDonald and Peters, Js.

Argued October 30—officially released December 10, 1996

*Vincent F. Sabatini,* with whom were *Sandra Rachel Baker* and *David E. Kamins,* for the appellants (plaintiffs).

*Priscilla J. Green,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellees (named defendant et al.).

*Job Taylor III,* pro hac vice, with whom were *Marcella Hourihane, Eric A. Richardson,* pro hac vice, and, on the brief, *Louise M. Zeitzew,* pro hac vice, *Michael K. Brown, Thomas L. Casagrande* and *Isabel E. Chenoweth,* for the appellee (defendant Mazda Motor of America, Inc.).

KATZ, J. The dispositive issue in this appeal is whether the mailing provisions of General Statutes § 4-180 (c)[1] are mandatory, such that an agency's failure

---

[1] General Statutes § 4-180 (c) provides: "A final decision in a contested case shall be in writing or orally stated on the record and, if adverse to a party, shall include the agency's findings of fact and conclusions of law necessary to its decision. Findings of fact shall be based exclusively on the evidence in the record and on matters noticed. The agency shall state in the final decision the name of each party and the most recent mailing address, provided to the agency, of the party or his authorized representative. The final decision shall be delivered promptly to each party or his authorized representative, personally or by United States mail, certified or registered,

to abide by those provisions tolls the time period in which an appeal of that agency's decision must be filed. We conclude that the mailing provisions of § 4-180 (c) are directory in nature, and that, where timely actual notice of an agency's decision has been provided, the agency's failure to follow those provisions to the letter does not prevent its decision from becoming effective for the purpose of calculating the time period in which an appeal of that decision must be brought.

The plaintiffs, Crest Pontiac Cadillac, Inc. (Crest), and Morande Brothers, Inc. (Morande), appeal separately from the trial court's dismissal of their joint appeal of a ruling by the defendant department of motor vehicles (department)[2] granting a license to the defendant Gorin's Sports Car Center, Inc. (Gorin), to sell automobiles distributed by the defendant Mazda Motor of America, Inc. (Mazda), at Gorin's business location at 170 Weston Street in Hartford.[3] Because the plaintiffs

postage prepaid, return receipt requested. The final decision shall be effective when personally delivered or mailed or on a later date specified by the agency."

[2] The commissioner of motor vehicles was also named as a defendant in the trial court.

[3] Gorin is no longer in business at this location. At oral argument the question was raised, sua sponte, as to whether this fact made the appeal moot. "Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. Justiciability requires . . . that there be an actual controversy between or among the parties to the dispute: Courts exist for determination of actual and existing controversies, and under the law of this state the courts may not be used as a vehicle to obtain judicial opinions on points of law. . . . [W]here the question presented is purely academic, we must refuse to entertain the appeal." (Citations omitted; internal quotation marks omitted.) *Hallas* v. *Windsor*, 212 Conn. 338, 347, 562 A.2d 499 (1989). "A case becomes moot when due to intervening circumstances a controversy between the parties no longer exists." (Internal quotation marks omitted.) Id., 347–48.

We may retain jurisdiction, however, where the matter being appealed creates collateral consequences prejudicial to the interests of the appellant, even though developments during the pendency of the appeal would otherwise render it moot. *Housing Authority* v. *Lamothe*, 225 Conn. 757, 765,

filed their appeal forty-nine days after the department's decision was mailed, four days beyond the time allotted for appeal of such decisions; see General Statutes § 4-183 (c);[4] the trial court dismissed the appeal for lack of subject matter jurisdiction. We affirm the judgment of the trial court.

The following facts are undisputed. On November 14, 1991, the department issued Gorin a license to sell Mazda automobiles. On November 21, 1991, Gorin and Mazda entered into a dealership agreement under which Gorin would sell Mazda automobiles at Gorin's established Jaguar-Alfa Romeo dealership located at 170 Weston Street in Hartford.[5] Pursuant to this agreement,

---

627 A.2d 367 (1993). In this case, the plaintiffs have filed a separate action in the Superior Court in the judicial district of Hartford-New Britain at New Britain, in which they are claiming damages, including loss of profits, arising from the department's granting of license to Gorin to sell Mazdas. Because, as the parties agree, the outcome of that action may be substantially affected by our ruling on the present appeal, we conclude that there are collateral consequences sufficient to allow this court to retain jurisdiction.

[4] General Statutes § 4-183 (c) provides: "Within forty-five days after mailing of the final decision under section 4-180 or, if there is no mailing, within forty-five days after personal delivery of the final decision under said section, a person appealing as provided in this section shall serve a copy of the appeal on the agency that rendered the final decision at its office or at the office of the attorney general in Hartford and file the appeal with the clerk of the superior court for the judicial district of Hartford-New Britain or for the judicial district wherein the person appealing resides or, if that person is not a resident of this state, with the clerk of the court for the judicial district of Hartford-New Britain. Within that time, the person appealing shall also serve a copy of the appeal on each party listed in the final decision at the address shown in the decision, provided failure to make such service within forty-five days on parties other than the agency that rendered the final decision shall not deprive the court of jurisdiction over the appeal. Service of the appeal shall be made by (1) United States mail, certified or registered, postage prepaid, return receipt requested, without the use of a sheriff or other officer, or (2) personal service by a proper officer or indifferent person making service in the same manner as complaints are served in ordinary civil actions."

[5] The Weston Street location is approximately eight miles from Crest's dealership in Newington and approximately seven miles from Morande's dealership in Manchester. This location is thus within the plaintiffs' "relevant market area" as defined by General Statutes § 42-133r (14) (relevant market

Gorin purchased the assets of a Mazda dealer in East Windsor. Neither Mazda, Gorin, nor the department notified the plaintiffs, who were also Mazda dealers, of the dealership agreement or license application.

On November 22, 1991, the plaintiffs filed a formal protest with the department because Mazda had not notified them of the agreement and because there had been no hearing as allegedly required by General Statutes § 42-133dd (a).[6] The department declined to grant a hearing because it considered the Mazda-Gorin agreement to be a relocation of an established dealership within that dealership's area of responsibility under § 42-133dd (b)[7] and, therefore, exempt from the hearing

area is area within fourteen mile radius of existing dealership or that area for which dealership has responsibility as defined in franchise agreement, whichever is greater). The hearing provisions of General Statutes § 42-133dd (a) apply only to those dealerships that are established within the relevant market area of existing dealerships.

[6] General Statutes § 42-133dd (a) provides: "In the event that a manufacturer or distributor seeks to enter into a franchise establishing a new dealer or relocating an existing dealer within or into a relevant market area where the same line make is then represented, the manufacturer or distributor shall in writing, by certified mail, first notify the commissioner and each dealer in such line make in the relevant market area of its intention to establish a new dealer or to relocate an existing dealer within or into that market area. Within twenty days of receiving such notice or within twenty days after the end of any appeal procedure provided by the manufacturer or distributor, any such dealer may file with the commissioner a protest concerning the establishing or relocating of such new or existing dealer. When such a protest is filed, the commissioner shall inform the manufacturer or distributor that a timely protest has been filed, and that the manufacturer or distributor shall not establish or relocate the proposed dealer until the commissioner has held a hearing, nor thereafter, if the commissioner determines that there is good cause for denying the establishment or relocation of such dealer. This section shall not apply to the sale, lease or transfer of ownership of an active, existing dealer, nor shall any provision of this section prohibit a manufacturer from entering into a franchise arrangement with a successor dealer at the same location."

[7] General Statutes § 42-133dd (b) provides: "This section shall not apply to (1) the relocation of an existing dealer within that dealer's area of responsibility under its franchise, provided that the relocation shall not be at a site within six miles of a licensed dealer for the same line make of motor vehicle or (2) the appointment of a dealer in the same relevant market area, within

requirements of § 42-133dd (a). The plaintiffs appealed to the Superior Court in the judicial district of Hartford-New Britain at Hartford, and the trial court, *Maloney, J.*, ordered the department to conduct a hearing to determine whether the Mazda-Gorin agreement established a new dealership and, if so, to hold a hearing pursuant to § 42-133dd (a) in order to determine whether there was good cause to deny Gorin a license to sell Mazdas. The department thereafter held the first hearing over two days, September 10, 1992, and November 4, 1992, after which the department hearing officer ruled that the Mazda-Gorin agreement had established a new dealership.

Between May 12, 1993, and August 4, 1993, the second hearing pursuant to § 42-133dd (a) was conducted before hearing officer Brian C. Carey. On July 27, 1994, Carey rendered a decision concluding that there was no good cause to deny Gorin a license to sell Mazdas. Carey's final decision was mailed to the parties and their attorneys via "bulk certified mail" on Wednesday, July 27, 1994.[8] By Friday, July 29, 1994, all parties had received copies of the decision.

On September 6, 1994, within forty-five days of the mailing of the decision, the plaintiffs served notice of their appeal on all parties. On September 14, 1994, forty-nine days after the decision had been mailed and forty-seven days after all parties had received it, the plaintiffs filed an appeal of the decision in the Superior Court.

one year, at either the same location or within a two-mile radius from a predecessor dealer who ceased operations."

[8] "Bulk certified mail" is a method of mailing in which the post office provides the sender with an acknowledgment that on a given day a certain bulk mailing was processed. The individual pieces of mail are not marked with the certified date of mailing. Rather, a separate record of the mailing, itemizing the contents, is marked with a "round-robin" stamp indicating the date of mailing. Bulk certified mail is a less expensive method than regular certified mail.

Prior to oral argument on the plaintiffs' appeal, the trial court, sua sponte, raised the issue of subject matter jurisdiction because the plaintiffs' appeal appeared to have been filed beyond the statutory time limit. See General Statutes § 4-183 (c). All of the defendants except Gorin promptly filed motions to dismiss for lack of subject matter jurisdiction pursuant to § 4-183 (c).[9] On November 30, 1995, the trial court, concluding that the mailing provisions of § 4-180 (c) were merely directory and, thus, that the plaintiffs' appeal was untimely, dismissed the appeal for lack of subject matter jurisdiction. The plaintiffs appealed separately from the judgment of the trial court to the Appellate Court, and we transferred the appeals to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

The plaintiffs argue that the trial court improperly concluded that the mailing provisions of § 4-180 (c) ("United States mail, certified or registered, postage prepaid, return receipt requested") were merely directory and that the department's failure to comply with the mailing provisions did not free the plaintiffs from the statutory requirement that they file their appeal within forty-five days of the mailing of the department's decision. Specifically, the plaintiffs assert that: (1) the subsection's use of the word "shall" in setting forth the mailing provisions indicates their mandatory nature; (2) the mailing provisions are related to matters of substance and not merely an attempt to secure order, system and dispatch in proceedings; and (3) the legislative history of the statute indicates a legislative intent that

---

[9] It is settled that an appeal of an administrative decision pursuant to § 4-183 (c) must be *filed* with the Superior Court within forty-five days after the mailing of the hearing officer's final decision. Failure to appeal within forty-five days deprives the court of subject matter jurisdiction; *Ann Howard's Apricots Restaurant, Inc.* v. *Commission on Human Rights & Opportunities*, 237 Conn. 209, 219–20, 676 A.2d 844 (1996); *Glastonbury Volunteer Ambulance Assn., Inc.* v. *Freedom of Information Commission*, 227 Conn. 848, 854, 633 A.2d 305 (1993); a principle not challenged by the plaintiffs.

the provisions be mandatory.[10] In response, the defendants argue that the mailing provisions are merely directory in that they were established for the convenience of the parties, and not to affect any substantive rights, and that the legislative history supports this interpretation. In addition, the defendants argue that the plaintiffs cannot claim prejudice because they had timely notice of the decision and, therefore, could have filed their appeal within the forty-five day period mandated by § 4-183 (c). We agree with the defendants.

The plaintiffs recognize that failure to comply with this time limitation normally would deprive the court of subject matter jurisdiction. See footnote 9. They assert, however, that the limitation period of § 4-183 (c) should not be applied to their appeal because the department did not mail the hearing officer's final decision by "certified or registered [mail], postage prepaid, return receipt requested," as required by § 4-180 (c).[11] Section 4-180 (c)

---

[10] The plaintiffs' arguments are offered by Crest in its brief to this court. Morande adopts Crest's arguments and adds the argument that, even if the plaintiffs had actual notice of the decision, there was insufficient evidence to prove that they had actual notice of the *date* on which that decision had been mailed. We are not persuaded by Morande's subsidiary claim, which is disingenuous at best. Even if we were to decide that the decision did not become effective until received by the plaintiffs, the record is replete with evidence that the plaintiffs had notice of the decision on Friday, July 29, 1994, forty-seven days before the appeal was filed. Indeed, the plaintiffs conceded at oral argument that they had actual notice as of July 29, 1994.

In addition to its aforementioned claims, Crest argues that the department's decision was never final because the department did not first render a proposed decision pursuant to General Statutes § 4-179 and did not render its decision within ninety days pursuant to § 4-180 (a). These are claims the trial court would have considered if it had had subject matter jurisdiction over the appeal. Because these claims were neither addressed nor decided by the court below, however, they are not properly before this court. See *Connecticut Ins. Guaranty Assn.* v. *Union Carbide Corp.*, 217 Conn. 371, 385, 585 A.2d 1216 (1991); *State* v. *Hinckley*, 198 Conn. 77, 81, 502 A.2d 388 (1985).

[11] At oral argument, the plaintiffs asserted that, because the strictures of § 4-180 (c) had not been followed, the decision was *never* final or effective and, thus, the statutory period in which to file an appeal never began to

provides in pertinent part: "The [agency's] final decision shall be delivered promptly to each party or his authorized representative, personally or by United States mail, certified or registered, postage prepaid, return receipt requested. The final decision shall be effective when personally delivered or mailed or on a later date specified by the agency." The plaintiffs argue that the legislature's use of the word "shall" is indicative of the mandatory nature of the section. We disagree.

"Well established principles of statutory construction govern our determination of whether [a statute's provisions are] mandatory or directory. Our fundamental objective is to ascertain and give effect to the apparent intent of the legislature. *Ambroise* v. *William Raveis Real Estate, Inc.*, 226 Conn. 757, 764, 628 A.2d 1303 (1993); *Iovieno* v. *Commissioner of Correction*, 222 Conn. 254, 258, 608 A.2d 1174 (1992); *Chairman* v. *Freedom of Information Commission*, 217 Conn. 193, 200, 585 A.2d 96 (1991)." *Stewart* v. *Tunxis Service Center*, 237 Conn. 71, 76–77, 676 A.2d 819 (1996).

"While we generally will not look for interpretative guidance beyond the language of the statute when the words of that statute are plain and unambiguous; *Beloff* v. *Progressive Casualty Ins. Co.*, 203 Conn. 45, 54, 523 A.2d 477 (1987); our past decisions have indicated that the use of the word 'shall,' though significant, does not invariably create a mandatory duty. *Fidelity Trust Co.* v. *BVD Associates*, 196 Conn. 270, 278, 492 A.2d 180 (1985); *Tramontano* v. *Dilieto*, 192 Conn. 426, 433–34,

run, even after all parties had actual notice of the decision. The defendants point out that such an interpretation could lead to absurd results, such as the filing of an appeal six months or one year after the decision was mailed, even though all parties had actual notice of the decision. Indeed, if it were the case that the decision was never final, there would be the further absurd result that the plaintiffs' appeal of that decision to the Superior Court could never be timely or appropriate. See Practice Book § 4000; *Stroiney* v. *Crescent Lake Tax District*, 197 Conn. 82, 86, 495 A.2d 1063 (1985) (lack of final judgment is jurisdictional defect; court must dismiss appeal).

472 A.2d 768 (1984)." *Hall Manor Owner's Assn.* v. *West Haven*, 212 Conn. 147, 152, 561 A.2d 1373 (1989). In order to determine whether a statute's provisions are mandatory we have traditionally looked beyond the use of the word "shall" and examined the statute's essential purpose. Id. "The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory. If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words." (Internal quotation marks omitted.) *Katz* v. *Commissioner of Revenue Services*, 234 Conn. 614, 617, 662 A.2d 762 (1995). Furthermore, if there is no language that expressly invalidates any action taken after noncompliance with the statutory provisions, the statute should be construed as directory. Id.

The plaintiffs claim that the mailing provisions go to matters of substance because § 4-180 (c) must be read in conjunction with § 4-183 (c). We disagree. Section 4-183 (c) does not state that the mailing provisions of § 4-180 (c) must be followed strictly, nor does it contain any language that would indicate a tolling of the statutory time for appeal if those provisions are not followed. Rather, it simply makes clear that the provision in § 4-180 (c) stating that an administrative decision is effective upon mailing or personal delivery establishes the date upon which the judgment becomes final for purposes of appellate review. Aggrieved parties then have forty-five days in which to file an appeal. Practice Book § 4000. Neither § 4-180 (c) nor § 4-183 (c) contains language that would invalidate an action that failed to

comply strictly with the mailing provisions of § 4-180 (c). This omission indicates a legislative intent that the provisions operate to secure order, system and dispatch in the proceedings. *Katz* v. *Commissioner of Revenue Services*, supra, 234 Conn. 617.

All of the parties assert that the legislative history of § 4-180 (c) supports their diametrically opposed interpretations of the statute. They each rely on the legislative history of the statute as amended during the 1988 February legislative session. The plaintiffs argue that the legislature would not have changed the language of § 4-180 (c) requiring the use of certified mail unless it had intended that change to have substantive effect. The defendants respond that the legislative change was simply a matter of making the process more convenient for the parties to an administrative appeal. It is understandable how these disparate arguments may be drawn from the legislative history, because that history is sparse at best.

The mailing provisions at issue were added to § 4-180 (c) in 1988, as part of an overall restructuring of the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq. Public Acts 1988, No. 88-317, § 17. The sole evidence of any possible legislative intent behind the amendment of § 4-180 (c) is in a report presented to the joint committee on the judiciary by the law revision commission (commission). Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1988 Sess., pp. 377, 382–83. In 1985, the commission had begun a review of amendments to the UAPA that had been proposed by the Administrative Law Section of the Connecticut Bar Association. Id., p. 377. The commission report was the result of that review, and in the report the commission recommended a number of changes to the UAPA, some of which set new standards or procedures, others of which merely clarified previously established procedures. The amendments to the

mailing provisions of § 4-180 (c) were of the latter type. The commission explained in its report that the change in mailing procedures was designed to "make it *easier* to establish the mailing date of a decision." (Emphasis added.) Id., p. 383. We note that nowhere in the report or in any of the legislative discussion regarding the proposed changes to the UAPA, what little there was, did anyone mention that there should be a penalty for noncompliance with the proposed mailing provisions.

In the absence of any language or history of § 4-180 (c) to indicate a legislative intent that the mailing provisions be mandatory, we conclude that those provisions are designed to promote order, system and dispatch in the proceedings, and as such are purely directory.[12] Failure to abide by those provisions does not, therefore, toll the period in which an aggrieved party must file an appeal of the administrative decision.

The judgment is affirmed.

In this opinion BORDEN, PALMER and PETERS, Js., concurred.

MCDONALD, J., concurring. I concur in the result reached by the majority for the following reason.

The plaintiffs concede that they had actual notice of the decision of the department of motor vehicles (department) more than forty-five days before filing their appeals. See General Statutes § 4-183 (c). This

---

[12] The plaintiffs rely heavily on our decision last year in *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities*, 236 Conn. 681, 674 A.2d 1300 (1996). Their reliance is misplaced. In that case, we determined that General Statutes (Rev. to 1993) §§ 46a-83 (b) and 46a-84 (b) should be read as mandatory, not only because of the presence of the word "shall" but also because those statutes contained penalties for noncompliance. Furthermore, the extensive legislative history of §§ 46a-83 and 46a-84 clearly indicated the intent of the legislature that the provisions be mandatory. Such is decidedly not the case with § 4-180 (c).

court has held on numerous occasions that actual notice is sufficient to overcome potential defects in statutorily prescribed manners and forms of notice. See *Russell v. R. N. Russell Welding, Inc.*, 226 Conn. 508, 512, 627 A.2d 1344 (1993); *Okee Industries, Inc.* v. *National Grange Mutual Ins. Co.*, 225 Conn. 367, 375–78, 623 A.2d 483 (1993); *Jefferson Garden Associates* v. *Greene*, 202 Conn. 128, 138, 148–49, 520 A.2d 173 (1987); *Rogers v. Commission on Human Rights & Opportunities*, 195 Conn. 543, 549, 489 A.2d 368 (1985).

General Statutes § 4-180 (c) provides that a decision shall be delivered "personally or by United States mail, certified or registered, postage prepaid, return receipt requested." The entire thrust of the statute is to ensure that the parties receive actual notice of the effective date of the decision, and the prescribed statutory requirements act to create testimonial or documentary evidence of the time of delivery. Since the plaintiffs had actual notice of the department's decision more than forty-five days before filing their appeals, they cannot complain that the agency failed to abide by the provisions of § 4-180 (c).