IN RE NICHOLAS R.*
(AC 25987)

Dranginis, Flynn and DiPentima, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court. ·

Argued September 20—officially released November 15, 2005

*Gary J. Wilson*, for the appellant (respondent father).

*Gregory T. D'Auria*, associate attorney general, with whom were *Clare E. Kindall*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, for the appellee (petitioner).

*Victoria T. Ferrara*, for the minor child.

*Opinion*

FLYNN, J. The respondent father, Nicholas R., Sr.,[1] appeals from the judgment of the trial court sustaining an order of temporary custody of his minor child to the commissioner of children and families (commissioner). On appeal, the respondent claims that the trial court abused its discretion by sustaining the order of temporary custody on the basis of evidence that was obtained without probable cause. We conclude that the court did not abuse its discretion in sustaining the order of

---

[1] The respondent mother has not appealed from the judgment sustaining the order of temporary custody. We therefore refer in this opinion to the respondent father as the respondent.

temporary custody and, accordingly, affirm the judgment of the trial court.

The facts relevant to the disposition of the respondent's appeal are as follows. The parents of Nicholas R. had a history with the department of children and families (department). When Nicholas was born on July 13, 2004, his mother informed hospital personnel that she had used marijuana until she learned that she was pregnant in the fourth month. A referral to the department was made, but the case subsequently was closed because the mother tested negative for drug use. On July 20, 2004, the department received an anonymous call that the respondent was using marijuana daily, but that report was not accepted for a new investigation. On July 31, 2004, another report was made to the department that the child's parents were using marijuana. Referrals were made, and the case was closed unsubstantiated.

On September 22, 2004, when Nicholas was ten weeks old, his parents took him with them to the department of social services to apply for temporary assistance to families with children. While all three of them were waiting in the reception area, another client in the area passed a confidential note to an eligibility worker at the front desk who then gave the note to Ann Erikson, a social worker at the department of social services. The note indicated that the respondent had shaken the ten-week old baby and struck him on the face and back while in the reception area. At that time, Erikson did not know who had written the note, but she later met the department of social services client who had written the note.

After receiving the note, Erikson spoke with a Bridgeport police officer on duty in the reception area, who stated that he had not seen anything occur. Erikson then talked with her supervisor, Earl Fisher. On the

basis of the note, Erikson became concerned about shaken baby syndrome[2] and, as a mandated reporter, telephoned the department. Erikson then called Nicholas' parents into her office and interviewed them, but did not tell them that she had contacted the department. Within approximately twenty-five minutes, Theresa Osos, a social worker with the department, arrived. Osos determined that this was a "high risk" case. Because of her concern that Nicholas might have internal injuries, she informed the parents that the department was requesting that Nicholas be cleared medically either by their own pediatrician or by a hospital emergency room. The mother consented to the medical examination of Nicholas, but she later testified that she had felt forced into doing so. Initially, the parents attempted to contact the child's pediatrician, but after waiting on hold for a long time, one of Nicholas' parents suggested that they instead go to the emergency room. The emergency room medical examination did not reveal any head trauma, but x rays revealed that Nicholas had a fracture of his left arm at least a few weeks old, which the court found to be caused by force and not by accidental means.

The respondent claims on appeal that he was forced to obtain a medical evaluation in order for the department to establish probable cause to invoke a ninety-six hour hold pursuant to General Statutes § 17a-101g, and that, without the coerced medical examination, the department would not have had probable cause. Accordingly, the respondent argues that the court abused its discretion in considering the evidence of the medical examination that was obtained without probable cause. We do not agree.

---

[2] Erikson testified that she had worked for the last eight years in the acquired brain injury waiver program, which concerns those with shaken baby syndrome.

"[T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." (Internal quotation marks omitted.) *Segale* v. *O'Connor*, 91 Conn. App. 674, 677, 881 A.2d 1048 (2005).

General Statutes § 17a-101g (c) provides in relevant part: "If the Commissioner of Children and Families, or his designee, has probable cause to believe that the child or any other child in the household is in imminent risk of physical harm from his surroundings and that immediate removal from such surroundings is necessary to ensure the child's safety, the commissioner, or his designee, shall authorize any employee of the department or any law enforcement officer to remove the child and any other child similarly situated from such surroundings without the consent of the child's parent or guardian. . . ."

Although Nicholas' mother testified that she had felt forced to comply with the department's request for a medical evaluation, we note that consent is judged by an objective standard. See *State* v. *Yusuf*, 70 Conn. App. 594, 605, 800 A.2d 590, cert. denied, 261 Conn. 921, 806 A.2d 1064 (2002); see also *Florida* v. *Jimeno*, 500 U.S. 248, 251, 111 S. Ct. 1801, 114 L. Ed. 2d 297 (1991). Osos testified on cross-examination that "what I said [to the parents] was that [the department] needed this baby to be medically cleared because of the allegations, and [I] explained to them why." When asked if she had told the parents that they had to have Nicholas medically cleared, she responded that she did not tell them that "they had to, but that's what [the department] was requesting." After waiting on hold with Nicholas' pediatrician, one of his parents suggested that the child be examined at the hospital, and Osos testified that she was under the impression that the parents had gone willingly. Osos then drove the parents to the hospital,

as they did not have a car. Additionally, there was no testimony from the respondent that he had felt coerced into compliance.

Moreover, this was not a criminal trial in which the strict rules of evidence prevail. Child neglect proceedings are civil proceedings, which are not quasi-criminal in nature. *In re Samantha C.*, 268 Conn. 614, 649, 847 A.2d 883 (2004).[3] Here, where the court was required to look at the well-being of an infant and there was medical evidence that revealed a fracture in the arm of that ten week old child, the exclusionary rule would not apply. See *State* v. *Foster*, 258 Conn. 501, 782 A.2d 98 (2001) (exclusionary rule not applied to probation violation hearing); *Fishbein* v. *Kozlowski*, 252 Conn. 38, 743 A.2d 1110 (1999) (exclusionary rule not applied in hearing on suspension of driver's license for operation of motor vehicle while under influence of liquor). Because the exclusionary rule, or the fruit of the poisonous tree doctrine,[4] does not apply in this case, the medical examination of Nicholas was not inadmissible, and the court properly considered the results of the examination. Because this is a civil case, even if the court had concluded that the parents had been forced to seek a medical examination, the exclusionary rule would not apply so as to make the evidence inadmissible. Once that examination was admitted into evidence revealing a fracture that indicated possible abuse, the court acted well within its authority in sustaining the order of temporary custody.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[3] In contrast to neglect proceedings, juvenile delinquency proceedings are quasi-criminal; see *In re Samantha C.*, supra, 268 Conn. 648–49; and as such the exclusionary rule does apply. *In re Robert M.*, 22 Conn. App. 53, 60, 576 A.2d 549 (1990).

[4] "Under the exclusionary rule, evidence must be suppressed if it is found to be the fruit of prior police illegality." (Internal quotation marks omitted.) *State* v. *Paradis*, 91 Conn. App. 595, 607, 881 A.2d 530 (2005).