DUANE TOMPKINS *v.* FREEDOM OF INFORMATION COMMISSION ET AL.
(AC 32932)

Bear, Espinosa and Sheldon, Js.

Argued March 6—officially released July 3, 2012

*David C. Yale,* with whom, on the brief, was *Elliot B. Spector,* for the appellant (plaintiff).

*Valicia Dee Harmon,* commission counsel, for the appellee (named defendant).

*Alexander Wood,* pro se, the appellee (defendant).

*Opinion*

SHELDON, J. The issue presented in this appeal is whether the trial court properly dismissed the appeal of the plaintiff, Duane Tompkins, from the amended final decision of the named defendant, the freedom of information commission (commission), ordering the plaintiff's former employer, the town of Enfield police department (department), to disclose the plaintiff's redacted employment termination records to the defendants the Journal Inquirer and Alexander Wood and Jenna Carlesso, staff writers for the Journal Inquirer.[1] The plaintiff claims that the trial court erred in sustaining the commission's order of disclosure over his objection that the subject records are exempt from disclosure under either General Statutes § 1-210 (b) (2)[2] because their release would constitute an invasion of his personal privacy, or § 1-210 (b) (3) (G)[3] because they

---

[1] The Journal Inquirer, a newspaper based in Manchester, and Carlesso have not actively participated in any appeals subsequent to the commission's decision. Accordingly, the commission and Wood are the only defendants participating in the appeal to this court.

[2] General Statutes § 1-210 (b) provides in relevant part: "Nothing in the Freedom of Information Act shall be construed to require disclosure of . . . (2) Personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy . . . ."

[3] General Statutes § 1-210 (b) provides in relevant part: "Nothing in the Freedom of Information Act shall be construed to require disclosure of . . . (3) Records of law enforcement agencies not otherwise available to the public which records were compiled in connection with the detection or investigation of crime, if the disclosure of said records would not be in the public interest because it would result in the disclosure of . . . (G)

contain uncorroborated allegations of criminal activity. For the following reasons, we disagree and thus affirm the judgment of the trial court.[4]

The following undisputed facts and procedural history are relevant to our resolution of this appeal. While the plaintiff was a lieutenant with the department, he downloaded certain official departmental forms onto his personal thumb drive for use by one of the officers in the department's canine unit. Prior to downloading the forms onto the thumb drive, the plaintiff deleted

uncorroborated allegations subject to destruction pursuant to section 1-216 . . . ."

Additionally, we note that the plaintiff also claims that the records were subject to destruction pursuant to General Statutes § 1-216. Section 1-216 provides: "Except for records the retention of which is otherwise controlled by law or regulation, records of law enforcement agencies consisting of uncorroborated allegations that an individual has engaged in criminal activity shall be reviewed by the law enforcement agency one year after the creation of such records. If the existence of the alleged criminal activity cannot be corroborated within ninety days of the commencement of such review, the law enforcement agency shall destroy such records." Because the issue of destruction is not relevant to the underlying issue of disclosure, we need not address it.

[4] The plaintiff also claims that the court improperly declined to consider whether public concern over the subject records outweighs his expectation of privacy under the United States constitution. Our Supreme Court has expressly rejected a balancing test for determining what constitutes an invasion of personal privacy for purposes of § 1-210 (b). See *Perkins* v. *Freedom of Information Commission*, 228 Conn. 158, 175, 635 A.2d 783 (1993); *Chairman* v. *Freedom of Information Commission*, 217 Conn. 193, 200–201, 585 A.2d 96 (1991). We, therefore, conclude that this claim lacks merit.

Lastly, the plaintiff argues that the court improperly declined to consider whether the department's search of his thumb drive was an unconstitutional act and violated his expectation of privacy under the United States constitution. More specifically, citing to *Katz* v. *United States*, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967), the plaintiff appears to be asserting that the exclusionary rule applies to the search of his thumb drive. "[U]nder the exclusionary rule, evidence must be suppressed if it is found to be the fruit of prior police illegality." (Internal quotation marks omitted.) *State* v. *Boyd*, 295 Conn. 707, 717, 992 A.2d 1071 (2010). Because the exclusionary rule does not apply to civil cases; see *In re Nicholas R.*, 92 Conn. App. 316, 321, 884 A.2d 1059 (2005); we conclude that this claim also lacks merit.

from it all of his personal documents, including the texts of several instant message conversations between himself and other unidentified individuals and other personal records. When the canine officer to whom the thumb drive had been given ceased working for the department, for reasons unrelated to this case, he was replaced by another canine officer who continued to use the thumb drive in the course of his official duties for approximately one year without incident.

One day, however, when the second canine officer attempted to open the files on the thumb drive, he found that he could not do so. To determine what was wrong with the thumb drive, the officer brought it to a computer technician who was not affiliated with the department. Discovering that certain files on the thumb drive were corrupted, the technician attempted to recover them. In so doing, the technician inadvertently uncovered the personal records that the plaintiff thought he had permanently erased. The technician provided the canine officer with a disc of the recovered files and informed him that he would need to review the files in order to locate the desired forms. Upon reviewing the disc, however, the officer found the plaintiff's instant message conversations as well as other records tending to demonstrate improper off duty conduct by the plaintiff. The canine officer then turned the disc over to the department for its review. On the basis of its review, the department commenced an internal affairs investigation as to both the origins of the recovered thumb drive records and the plaintiff's fitness for duty as a police officer. Thereafter, on or about October 9, 2007, the town of Enfield (town) and the plaintiff entered into an agreement severing his employment with the town as of July 9, 2008. The agreement referenced, but did not describe in detail, the plaintiff's off duty conduct. In addition, the town agreed that in the event of a request for disclosure of any documents relating

to the plaintiff's off duty conduct, it would give the plaintiff notice of the request and an opportunity to object to disclosure of the documents as an invasion of his personal privacy under § 1-210. The town and the plaintiff agreed that the severance agreement, so negotiated, would be in lieu of all further proceedings by the town against the plaintiff on the basis of his off duty conduct.

On October 15, 2007, the Journal Inquirer, Wood and Carlesso requested the town to produce "all records generated or received by the [town], including the [department], in connection with the recent suspension of [the plaintiff]." The request "include[d] but [wa]s not limited to all records related to the facts or allegations that led to the suspension, including facts uncovered by the internal investigation, and all records setting forth the starting and ending dates of the suspension and any effects the suspension may have had on the [plaintiff's] compensation." In its October 22, 2007 response to the request, the town refused to produce the requested records, claiming that it was prohibited from so doing in light of applicable statutory exemptions under § 1-210 and an objection to disclosure filed by the plaintiff under General Statutes § 1-214 (c).[5]

---

[5] General Statutes § 1-214 (c) provides: "A public agency which has provided notice under subsection (b) of this section shall disclose the records requested unless it receives a written objection from the employee concerned or the employee's collective bargaining representative, if any, within seven business days from the receipt by the employee or such collective bargaining representative of the notice or, if there is no evidence of receipt of written notice, not later than nine business days from the date the notice is actually mailed, sent, posted or otherwise given. Each objection filed under this subsection shall be on a form prescribed by the public agency, which shall consist of a statement to be signed by the employee or the employee's collective bargaining representative, under the penalties of false statement, that to the best of his knowledge, information and belief there is good ground to support it and that the objection is not interposed for delay. Upon the filing of an objection as provided in this subsection, the agency shall not disclose the requested records unless ordered to do so by the Freedom of Information Commission pursuant to section 1-206. Failure to comply with a request to inspect or copy records under this section shall

On October 30, 2007, the Journal Inquirer, Wood and Carlesso appealed to the commission from the town's refusal to provide them with the requested records. Prior to the hearing, on February 5, 2008, the town released the severance agreement between the plaintiff and the town to the Journal Inquirer, Wood and Carlesso, which indicated that there had been "disputes between [the plaintiff] and the [department] concerning [the plaintiff's] off-duty conduct" and that "[the plaintiff had] decided to resign his position in lieu of further proceedings."

On March 14, 2008, the town submitted to the commission, for its in camera review, a series of documents containing instant message conversations between the plaintiff and unidentified individuals together with the findings of the department's internal affairs investigation (subject records). The town claimed exemptions from disclosure with respect to the subject records under §§ 1-210 (b) (2) and (3) (G) and 1-217.[6] At the hearing before the commission's hearing officer on March 27, 2008, the town provided the Journal Inquirer, Wood and Carlesso with records documenting the compensation status of the plaintiff after he was suspended and until the severance agreement became effective, as well as a portion of the subject records.

The hearing officer issued a proposed final decision on May 8, 2008, proposing to rule that the subject records do not pertain to a matter of public concern, but only to details of the plaintiff's off duty, private

constitute a denial for the purposes of section 1-206. Notwithstanding any provision of this subsection or subsection (b) of section 1-206 to the contrary, if an employee's collective bargaining representative files a written objection under this subsection, the employee may subsequently approve the disclosure of the records requested by submitting a written notice to the public agency."

[6] Section 1-217 governs the nondisclosure of residential addresses of certain individuals.

activity. Thereafter, however, at a special meeting on June 17, 2008, the commission voted to reject the hearing officer's proposed final decision and directed its staff, instead, to prepare a new proposed final decision consistent with the commissioners' comments at the special meeting. A second proposed final decision, ordering disclosure of all of the subject records without redactions, was approved and issued by the commission as its final decision on August 13, 2008. The plaintiff appealed from this decision to the trial court.

Upon reviewing the subject records in camera, the trial court initially remanded the case to the commission to reconsider its final decision "by reviewing the documents again and discussing whether it is a matter of legitimate public concern to release the verbatim transcripts . . . ." The court retained jurisdiction over the case pending the remand. The commission later issued an amended final decision dated April 21, 2010. In that decision, the commission found that, although the subject records pertained to a matter of legitimate public concern, they should be redacted to exclude certain sexually explicit language and information tending to identify the residential address of the plaintiff. On November 5, 2010, the trial court dismissed the plaintiff's appeal on the merits, concluding that the commission's amended final decision complied with the requirements of § 1-210 (b). The court summarily rejected the plaintiff's claim that its inquiry on his statutory appeal should be governed by the standards recognizing and enforcing the plaintiff's expectation of personal privacy under the fourth and fourteenth amendments to the United States constitution. This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff challenges the trial court's rejection of his claim of exemption under § 1-210 (b) (2) on two

legal bases. First, he contends that, in construing and applying the exemption for disclosures constituting invasions of personal privacy, the commission and the court were obligated to consider and to enforce his constitutional right to privacy under the fourth and fourteenth amendments to the United States constitution. Second, he argues that, even if the constitutional right to privacy is inapplicable to his statutory claim, the subject records satisfy both parts of the established test governing such claims, as articulated by our Supreme Court in *Perkins* v. *Freedom of Information Commission*, 228 Conn. 158, 168, 635 A.2d 783 (1993). For the following reasons, we disagree.

A

An appeal from a commission decision is governed by the Uniform Administrative Procedure Act (UAPA). See *Board of Pardons* v. *Freedom of Information Commission*, 19 Conn. App. 539, 546, 563 A.2d 314, cert. denied, 212 Conn. 819, 565 A.2d 539 (1989); see also General Statutes § 4-166 et seq. "[W]here a party appeals pursuant to the jurisdictional grant of the UAPA, the agency action is measured by the standards contained within the UAPA. . . . We, therefore, review the merits of the . . . claims in the context of the limited scope of judicial review afforded by the UAPA to determinations made by an administrative agency. . . . With regard to questions of fact, it is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the administrative agency. . . . Judicial review of the conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . The present appeal is from the decision of the trial court. We review that decision only to determine whether it was rendered

in accordance with the [UAPA]." (Citations omitted; internal quotation marks omitted.) *Pet* v. *Dept. of Health Services*, 228 Conn. 651, 660–61, 638 A.2d 6 (1994). Therefore, we must determine whether the court improperly found that the commission was not obligated to review the plaintiff's constitutional claims in the underlying Freedom of Information Act (act) action.

The plaintiff relies on *Chairman* v. *Freedom of Information Commission*, 217 Conn. 193, 585 A.2d 96 (1991), for his contention that the court improperly analyzed whether there would be an invasion of his personal privacy under § 1-210 (b) (2) by disclosing the subject records without considering whether his constitutional expectation of privacy would thereby be violated. The plaintiff, however, misconstrues the mandate of *Chairman*. In *Chairman*, our Supreme Court concluded that the commission, relying on the precepts of the first amendment to the United States constitution, improperly determined that a public official has minimal or nonexistent rights to personal privacy. Id., 198–99. The court concluded that "[t]he fact that the [act] implicates first amendment concerns of access to information . . . does not necessarily imply that first amendment constraints on the personal privacy rights of public figures control the application of statutory privacy exemptions under the [act]. It cannot be assumed that constitutional precepts that have evolved in the context of civil libel proceedings determine the extent of privacy rights in the entirely different context of the [act]." Id. In other words, the mere fact that the act addresses matters that implicate constitutional concerns does not mean that constitutional standards govern the act. Our Supreme Court's conclusion in *Chairman*, therefore, directly contravenes the plaintiff's contention that the court was required to consider his constitutional right to personal privacy in the context of his appeal.

By analogy to the previously described analysis from *Chairman*, it must be noted that the personal privacy interest protected by the fourth and fourteenth amendments is very different from that protected by the statutory exemption from disclosure of materials, the release of which would constitute an invasion of personal privacy under the act. Whereas the former concerns itself with preventing unreasonable intrusions by the government or its agents into those aspects of an individual's person, property or activities as to which he has an actual and justifiable expectation of freedom from such governmental intrusions, the latter concerns itself with preventing further disclosure or dissemination by the government of information already in its possession when such disclosure would be highly offensive to a reasonable person and would not promote public awareness of matters of legitimate public interest. The constitutional inquiry under the fourth and fourteenth amendments as to the reasonableness of governmental access to private information simply has no bearing on the potential of such information, if disclosed, to offend reasonable persons or to shed light on matters of legitimate public concern. Accordingly, we conclude that the court did not err in refusing to employ fourth and fourteenth amendment standards to evaluate his claim for an exemption from disclosure of the subject records under § 1-210 (b) (2).

B

Alternatively, the plaintiff claims that the subject records satisfy both parts of the *Perkins* test governing exemption from disclosure under § 1-210 (b) (2). See *Perkins* v. *Freedom of Information Commission*, supra, 228 Conn. 168. More specifically, he contends that, because the content of the subject records is not related to a subject of legitimate public concern and would be highly offensive to a reasonable person, the

records should be exempt from disclosure under *Perkins*. Therefore, he claims that the court's dismissal of his appeal from the commission's decision to disclose them was in error. We disagree.

We first set forth the applicable standard of review and governing case law. The plaintiff contends that the commission, in determining whether disclosure was appropriate, made findings of law rather than findings of fact, and thus that the standard of review should be de novo. We disagree. The present case involves applying the well settled meaning of § 1-210 (b) (2) to the facts of this particular case. The appropriate standard of judicial review, therefore, is "whether the commission's factual determinations are reasonably supported by substantial evidence in the record taken as a whole." *Rocque* v. *Freedom of Information Commission*, 255 Conn. 651, 659–60, 774 A.2d 957 (2001).

We note initially that public policy favors the disclosure of public records. See *Superintendent of Police* v. *Freedom of Information Commission*, 222 Conn. 621, 626, 609 A.2d 998 (1992). "[A]ny exception to that rule [therefore] will be narrowly construed in light of the general policy of openness expressed in the [act] legislation." (Internal quotation marks omitted.) *Ottochian* v. *Freedom of Information Commission*, 221 Conn. 393, 398, 604 A.2d 351 (1992). "The burden of establishing the applicability of an exemption clearly rests upon the party claiming the exemption." (Internal quotation marks omitted.) *Perkins* v. *Freedom of Information Commission*, supra, 228 Conn. 167. "This burden requires the claimant of the exemption to provide more than conclusory language, generalized allegations or mere arguments of counsel. Rather, a sufficiently detailed record must reflect the reasons why an exemption applies to the materials requested." *New Haven* v. *Freedom of Information Commission*, 205 Conn. 767, 776, 535 A.2d 1297 (1988).

When a claim for exemption is made under § 1-210 (b) (2), the person claiming the exemption must meet a twofold burden of proof. First, he must establish that the files at issue are personnel, medical or similar files. *Perkins* v. *Freedom of Information Commission*, supra, 228 Conn. 168. In this case, there is no dispute that the Journal Inquirer, Wood and Carlesso sought disclosure of personnel or similar files. Second, he must prove that disclosure of the files would constitute an invasion of his personal privacy. Id.

The test for determining whether a disclosure constitutes an invasion of personal privacy under § 1-210 (b) (2) was enunciated in *Perkins* v. *Freedom of Information Commission*, supra, 228 Conn. 175. There, our Supreme Court held that, "the invasion of personal privacy exception of [General Statutes] § 1-19 (b) (2) [now § 1-210 (b) (2)] precludes disclosure . . . only when the information sought by a request [1] does not pertain to legitimate matters of public concern *and* [2] is highly offensive to a reasonable person." (Emphasis added.) Id.

As to the first prong, our Supreme Court has determined that, "where a public official's private life does not concern or implicate his job as a public official, such information is not a legitimate matter of public concern." *Director, Retirement & Benefits Services Division* v. *Freedom of Information Commission*, 256 Conn. 764, 777, 775 A.2d 981 (2001). In the present case, however, the commission's findings demonstrate that the plaintiff's conduct did implicate his job as a public official. The commission observed that the subject records were of two types: (1) verbatim transcripts of instant message conversations between the plaintiff and other, unidentified individuals; and (2) documentation from the internal affairs investigation. In evaluating whether the plaintiff's instant message conversations pertained to a legitimate matter of public concern, the

commission first noted that they "contain the information which formed the basis for and triggered the internal affairs investigation in this case." Therefore, the commission found that disclosure of the instant message conversations was "necessary to facilitate the public's understanding and evaluation of the [department's] investigative process, decision-making and overall handling of an important matter involving a fellow police officer."[7]

Furthermore, the commission found that the documentation from the internal affairs investigation "evidence[d] a continuing practice that could pose a danger to portions of the public." As to the records' description of the plaintiff's off duty conduct, the commission implicitly determined that the conduct was egregious when it noted that "the more egregious the specific behavior, the more a finding of legitimate public concern is warranted . . . ." The commission also noted that "the fact that [the plaintiff] remained on the payroll of the [town] for ten months after the execution of the severance agreement, as well as the fact that the [t]own agreed to allow [the plaintiff] to have control over the release of his employment records . . . adds to the legitimacy of the public concern in this case."

On the basis of the foregoing findings, which are well supported by our own in camera review of the subject records, we conclude that the commission's determination that the subject records implicated legitimate matters of public concern is supported by substantial evidence.[8] Thus, the trial court did not err in upholding

[7] Our Supreme Court has noted that the public may have a legitimate interest in the integrity of local police departments and in disclosure of how such departments investigate and evaluate citizen complaints of police misconduct. See *Hartford* v. *Freedom of Information Commission*, 201 Conn. 421, 435, 518 A.2d 49 (1986).

[8] Additionally, we note that although, pursuant to *Perkins*, the finding that the subject records pertain to legitimate matters of public concern is sufficient to negate exemption from disclosure, the commission also determined that some of the language would be highly offensive to a reason-

the commission's decision that the subject records are not exempt from disclosure under § 1-210 (b) (2).

II

The plaintiff also argues before this court that the subject records are exempt from disclosure under § 1-210 (b) (3) (G) because they contain uncorroborated evidence of criminal allegations and thus are subject to destruction pursuant to § 1-216.[9] Because the plaintiff failed to raise this claim before the trial court, we decline to review it on appeal.[10]

Although the plaintiff initially raised the claim that the subject records are exempt from disclosure under § 1-210 (b) (3) (G) in his appeal from the commission's final decision dated August 13, 2008, he neglected to brief or to argue that claim before the trial court. Thus, after the commission issued its amended final decision, which included, inter alia,[11] a finding that the subject records are not exempt from disclosure under § 1-210 (b) (3) (G), the plaintiff raised no objection to that finding when he challenged the amended final decision

able person and accordingly redacted it from the disclosed records. We conclude that such redaction is appropriate in light of the content of the records. See *Rocque* v. *Freedom of Information Commission*, supra, 255 Conn. 665–68 (concluding that sexually explicit language contained in verbatim transcripts was not legitimate matter of public concern and was highly offensive to reasonable person).

[9] Records subject to destruction under this section are exempt from disclosure pursuant to § 1-210 (b) (3) (G).

[10] The town, which was initially a codefendant with the plaintiff in the proceeding before the commission, claimed that the subject records constituted those described in § 1-216, and thus that they were exempt from disclosure pursuant to § 1-210 (b) (3) (G). The town raised this claim before both the commission and the trial court. The commission found that the records were not exempt from disclosure pursuant to § 1-210 (b) (3) (G). The court, however, dismissed the town's appeal for failure to prosecute and thus never adjudicated this claim.

[11] The commission also determined that the subject records were a legitimate public concern but redacted them in compliance with *Perkins*.

on other grounds. The issue, therefore, was never decided by the court.

It is fundamental that claims of error must be distinctly raised and decided in the trial court before they are reviewed on appeal. As a result, Connecticut appellate courts "will not address issues not decided by the trial court." *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 52, 717 A.2d 77 (1998); see also *Crest Pontiac Cadillac, Inc.* v. *Hadley*, 239 Conn. 437, 444 n.10, 685 A.2d 670 (1996) (claims "neither addressed nor decided" by trial court not properly before appellate tribunal). Similarly, Practice Book § 60-5 provides in relevant part that our appellate courts "shall not be bound to consider a claim unless it was distinctly raised at the trial . . . ." As our Supreme Court has explained, "[t]he reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Internal quotation marks omitted.) *State* v. *Dalzell*, 282 Conn. 709, 720, 924 A.2d 809 (2007). We, therefore, conclude that this claim was abandoned at trial and decline to address it.

The judgment is affirmed.

In this opinion the other judges concurred.