******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JAMES E. WALKER *v.* COMMISSIONER
OF CORRECTION
(AC 38946)

Sheldon, Keller and Elgo, Js.

*Syllabus*

The petitioner sought a writ of habeas corpus, claiming that his trial counsel
had provided ineffective assistance. Specifically, the petitioner alleged
that trial counsel's prior relationship with D, a witness for the state in
the criminal case, created an actual conflict of interest and that his right
to due process had been violated by his exclusion from an in-chambers
conference regarding trial counsel's alleged conflict of interest. The
habeas court rendered judgment denying the petition, concluding that
there was insufficient evidence to establish an actual conflict of interest
and that the petitioner had abandoned his due process claim. Thereafter,
the petitioner, on the granting of certification, appealed to this court.
*Held*:

1. There was no merit to the petitioner's claim that the habeas court improp-
erly concluded that he failed to establish that trial counsel's prior rela-
tionship with D had created an actual conflict of interest with respect
to his representation of the petitioner; there was no indication in the
record that trial counsel simultaneously represented the petitioner and
D, the petitioner failed to identify any specific instances in the record
that suggested that trial counsel's limited interaction with D impaired
or compromised the petitioner's interests for the benefit of D, and the
record supported the habeas court's findings that trial counsel had
advocated strenuously on the petitioner's behalf and that counsel's per-
formance had contributed significantly to the jury's finding the petitioner
not guilty of one of the charged offenses.

2. The habeas court properly concluded that the petitioner had abandoned
his due process claim that he was denied his constitutional right to be
present at an in-chambers conference regarding trial counsel's alleged
conflict of interest; the petitioner abandoned his due process claim as
a result of his failure to brief it before the habeas court, as he did not
address the claim in his posttrial brief and posttrial reply brief, nor did
he attempt to amend his posttrial brief or otherwise seek to have the
court reconsider its decision not to address the claim.

Argued June 1—officially released October 3, 2017

*Procedural History*

Amended petition for a writ of habeas corpus,
brought to the Superior Court in the judicial district of
Tolland and tried to the court, *Oliver, J.*; judgment
denying the petition, from which the petitioner, on the
granting of certification, appealed to this court.
*Affirmed.*

*Stephanie L. Evans*, assigned counsel, for the appel-
lant (petitioner).

*Nancy L. Walker*, deputy assistant state's attorney,
with whom, on the brief, were *Patrick Griffin*, state's
attorney, and *Rebecca Barry*, assistant state's attorney,
for the appellee (respondent).

*Opinion*

ELGO, J. The petitioner, James E. Walker, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly concluded that (1) his defense counsel did not have an actual conflict of interest at the time of his representation of the petitioner and (2) he abandoned his due process claim that he was denied his right to be present at an in-chambers conference. We affirm the judgment of the habeas court.

In the underlying criminal proceeding, the petitioner was charged with two counts of assault in the first degree by means of the discharge of a firearm in violation of General Statutes §§ 53a-59 (a) (5) and 53a-8, and one count of conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 and 53a-59 (a) (5). *State* v. *Walker*, 147 Conn. App. 1, 6, 82 A.3d 630 (2013), aff'd, 319 Conn. 668, 126 A.3d 1087 (2015). The charges arose from the nonfatal shooting of two persons. Id., 4.

Following a trial, the jury found the petitioner guilty of conspiracy to commit assault in the first degree and not guilty of assault in the first degree, either as an accessory or as a principal. Id., 6. The court thereafter sentenced the petitioner to a total of nineteen years incarceration, and the petitioner appealed to this court. Id.

On direct appeal, this court determined, inter alia, that the record was inadequate to review the petitioner's conflict of interest claim and affirmed the judgment of conviction. Id., 15–16. Our Supreme Court thereafter affirmed our judgment. *State* v. *Walker*, 319 Conn. 668, 126 A.3d 1087 (2015).

The petitioner subsequently filed a petition for a writ of habeas corpus. At the habeas trial, the petitioner alleged that defense counsel, Attorney Richard Silverstein, provided him with ineffective legal representation based on a conflict of interest and alleged due process violations.[1] In its detailed and thorough memorandum of decision, the habeas court rejected those claims, concluding that there was insufficient evidence in the record to establish an actual conflict of interest on the part of defense counsel. In addition, the court determined that the petitioner's due process claim had been abandoned. Accordingly, the court denied the petition for a writ of habeas corpus, and this certified appeal followed.

I

The petitioner first claims that the court improperly concluded that he failed to establish an actual conflict of interest.[2] Specifically, he argues that defense counsel's prior relationship with James Dickerson, one of the

state's witnesses in its case against the petitioner, created an actual conflict of interest. The respondent, the Commissioner of Correction, contends that the court's conclusion was proper because the petitioner failed to satisfy his burden of proof. We agree with the respondent.

The following facts and procedural history are relevant to our discussion of this claim. In his direct appeal, our Supreme Court noted a discussion that occurred on the record during jury selection in the underlying criminal trial about Dickerson and defense counsel:

"The Court: Good morning, everybody. We are back to jury selection in [the present case]. The attorneys have brought a matter to the court's attention this morning which should be put on the record. [Assistant State's Attorney Stacey] Haupt [the prosecutor], I don't know if you want to go first or—

"[The Prosecutor]: . . . It was brought to my attention late Friday by [Assistant State's] Attorney Jack Doyle [regarding] the [plea offer] between . . . Dickerson and the state's attorney's office. I asked Attorney Doyle to write a memo about how exactly that went down and what promises had been made to [Dickerson] and in looking at his file attempting to prepare the memo, Attorney Doyle realized that [defense counsel] . . . had spoken to [Dickerson] at the request of Attorney Jamie Alosi to try to talk to him about taking some type of deal. However, it was prior to [Dickerson] cooperating in this case. I don't believe that deal came to fruition, but I just thought it should be brought to the court's attention that . . . [defense counsel] in some respect had conversations with one of the state's witnesses.

"The Court: Let me flush that out a bit. Apparently, [Dickerson], and it's already a matter of knowledge and public [record] in this case, is going to testify against [the petitioner]. [Dickerson], and I think you put this on the record earlier, and if not, it should be. [Dickerson] was on trial in front of this court, represented by Attorney Alosi. At some point, he entered a plea upstairs, and I had nothing to do with the plea. I had nothing to do with the sentencing. My involvement was picking a jury up to the point where the matter was resolved. Apparently, [defense counsel], you can add to that factual situation. Listen up, Mr. Walker, I just want to make sure you understand this.

"[Defense Counsel]: [Dickerson] was brought in to begin jury selection in a matter which he eventually [pleaded] guilty to and is seeking to have consideration for based on his testimony or anticipated testimony in this case. I happen[ed] to be on the sixth floor. He was in the bull pen upstairs with his attorney, and his attorney, who I know, had told me about the case he was proceeding to trial on. . . .

"Defense counsel then went on to explain that Dickerson's attorney had told him about the evidence against Dickerson relating to the sale of narcotics, which included a videotape of the purported transaction and a still photograph from that videotape that appeared to show Dickerson making the sale, and the fact that the state had offered Dickerson a plea agreement. Because defense counsel knew Dickerson, he was asked, or may have volunteered, to speak with Dickerson about the sentence that could be imposed in light of the evidence and Dickerson's past history. In summarizing the discussion that ensued, defense counsel noted that Dickerson had told him about the plea offer as well as what the plea agreement was that he could accept short of going to trial. Defense counsel then explained: I said, in my opinion, the evidence was substantial. Then again, I didn't spend more than five or six minutes with him, nor did I, other than the layout, which he probably already heard from his attorney, have anything that would impact on [the] decision he made. Then he proceeded to come down here and begin jury selection with Your Honor.

"Subsequent to that, it would appear, and I didn't know until, let's say, a month to six weeks after, that he had given that statement because it wasn't being handled by [the prosecutor] at that time . . . .

"[The petitioner] was incarcerated, having not made bond, and, at some point . . . I became aware that Dickerson had made a statement. As soon as I became aware, I asked [the prosecutor] to send me a copy of that statement. I spoke to [Assistant State's Attorney] Doyle. . . . I spoke to them about the parameters of the new plea agreement that [Dickerson] had entered into based on his cooperation, and I was told essentially what happened. I was given a copy of the statement, and that's where we are today. [The petitioner] is aware I had a limited interaction with [Dickerson] prior to him giving inculpatory evidence or [an] anticipated statement that inculpates him, and I explained to [the petitioner] that this in no way would impede my cross-examination of [Dickerson]. I don't think that that conversation is probably relevant to the deal he eventually entered into, and I would probably not, in my cross-examination, unless it came out that we knew each other, but we had known each other prior to me speaking to him up in court, and I wouldn't get into any details of the conversation. I don't think that would hamper my cross-examination of him at all. [The petitioner] has indicated to me that he wants me to continue to represent him.

"The Court: You heard that, Mr. Walker? You're comfortable with that?

"[The Petitioner]: Yes, yes.

"The Court: Let me tell you what I'm concerned about

to protect your rights. As your lawyer, [defense counsel] owes you a duty of undivided loyalty. He can't represent two people at the same time that have any kind of conflict. From what I've heard here today, I haven't seen any. Whatever he did with [Dickerson] was unrelated to whatever deal [Dickerson] now has going, and he can go after that deal hand and claw, and there's nothing that I can see in his prior contact with [Dickerson] that is even relevant to the situation that developed after he spoke to [defense counsel]. I don't see any conflict. I don't see any violation of the law by [defense counsel], and I want to make sure you're comfortable with it so we can get on with the trial, and you've got to let me know. Are you okay with it?

"[The Petitioner]: Yes.

"The Court: Good, all right, then we'll pick it up. Let's bring the panel out. Thank you." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Walker*, supra, 319 Conn. 670–74.

Following the habeas trial, the court found in its memorandum of decision that defense counsel's conduct "during the trial, including his blistering and thorough cross-examination of . . . Dickerson, showed no indication that his prior contact with and knowledge of . . . Dickerson adversely affected his representation of the petitioner. Further, the court found that the petitioner "failed to allege or establish what additional meaningful cross-examination could have been conducted by . . . counsel at trial [and that] . . . counsel's representation of the petitioner and cross-examination of . . . Dickerson contributed mightily . . . to the petitioner's acquittal on two of the three charges."

On appeal, the petitioner challenges the propriety of that determination. As a preliminary matter, we set forth the following guiding legal principles and standard of review governing ineffective assistance of counsel claims based on an actual conflict of interest. "[I]t is well established that [a] criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . It is axiomatic that the right to counsel is the right to the effective assistance of counsel." (Citation omitted; internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 677–78, 51 A.3d 948 (2012). "As an adjunct to this right, a criminal defendant is entitled to be represented by an attorney free from conflicts of interest." *Phillips* v. *Warden*, 220 Conn. 112, 132, 595 A.2d 1356 (1991).

In order to establish an actual conflict of interest, the petitioner "must establish (1) that counsel actively

represented conflicting interests and (2) that an actual conflict of interest adversely affected his lawyer's performance." (Internal quotation marks omitted.) *State* v. *Parrott*, 262 Conn. 276, 287, 811 A.2d 705 (2003); *Santiago* v. *Commissioner of Correction*, 87 Conn. App. 568, 583, 867 A.2d 70, cert. denied, 273 Conn. 930, 873 A.2d 997 (2005). To demonstrate an actual conflict of interest, "the petitioner must be able to point to *specific instances* in the record which suggest impairment or compromise of his interests for the benefit of another party. . . . A mere theoretical division of loyalties is not enough." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Santiago* v. *Commissioner of Correction*, supra, 584.

"[A] petitioner claiming ineffective assistance of counsel must demonstrate that his counsel's performance was deficient, and that the deficient performance resulted in actual prejudice to the defense." *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Once the petitioner establishes an actual conflict of interest, the "prejudice [prong of *Strickland*] is presumed because counsel [has] breach[ed] the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests." Id., 692. "Prejudice is presumed . . . if the [petitioner] demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance." Id.

On appeal, "facts found by the habeas court may not be disturbed unless they were clearly erroneous . . . . When . . . those facts are essential to a determination of whether the petitioner's sixth amendment rights have been violated, we are presented with a mixed question of law and fact requiring plenary review." (Internal quotation marks omitted.) *Hedge* v. *Commissioner of Correction*, 152 Conn. App. 44, 51, 97 A.3d 45 (2014), cert. denied, 321 Conn. 921, 138 A.3d 282 (2016).

At its essence, the petitioner's claim is that defense counsel, due to his prior relationship with Dickerson, actively represented competing interests while representing the petitioner. We do not agree.

An actual conflict of interest usually arises in the context of counsel's representation of multiple codefendants where counsel adduces evidence or advances arguments on behalf of one defendant that are damaging to the interests of the other defendant. See *Santiago* v. *Commissioner of Correction*, supra, 87 Conn. App. 583. In this case, Dickerson and Walker were not codefendants. An actual conflict of interest, however, also arises "if trial counsel simultaneously represents the defendant and another individual associated with the incident and that representation inhibits counsel's ability to represent the defendant." (Internal quotation

marks omitted.) *Goodrum* v. *Commissioner of Correction*, 63 Conn. App. 297, 317, 776 A.2d 461, cert. denied, 258 Conn. 902, 782 A.2d 136 (2001); see also *State* v. *Martin*, 201 Conn. 74, 80–81, 513 A.2d 116 (1986) (enumerating various types of conflicts of interest); *Santiago* v. *Commissioner of Correction*, supra, 583.

On our review of the record, the evidence in this case does not support a finding that defense counsel simultaneously represented Dickerson and the petitioner. At the habeas trial, defense counsel testified about his relationship to Dickerson and described it as a "brief" and "limited contact." The record indicates that he had a brief discussion with Dickerson that did not last more than five or six minutes and the discussion consisted of "lay[ing] out" information "which he probably already heard from his attorney . . . [and did not include] anything that would [have an] impact on [the] decision he made." (Internal quotation marks omitted.) *State* v. *Walker*, supra, 319 Conn. 672. The petitioner has not identified anything in the record that suggests impairment or compromise of his interests for the benefit of Dickerson. In our view, this limited encounter alone does not give rise to an actual conflict of interest. Moreover, the conversation between Dickerson and defense counsel occurred prior to Dickerson's giving the state any evidence against the petitioner.

As the habeas court emphasized in its memorandum of decision, defense counsel's blistering and thorough cross-examination of Dickerson gave no indication of his prior contact with, or knowledge of, Dickerson, which further underscored the lack of an actual conflict of interest. The lack of an actual conflict is further supported by the underlying trial transcript, which included an accusation that Dickerson lied to the police and falsely implicated the petitioner. In his closing argument, defense counsel criticized Dickerson by characterizing his testimony as "bought and paid for." In our view, counsel's cross-examination of Dickerson and his closing argument suggest that he energetically advocated on behalf of the petitioner. There is no suggestion that he was hampered by his prior limited interaction with Dickerson. Furthermore, the jury found the petitioner not guilty of assault in the first degree, convicting him only on the conspiracy charge. The habeas court noted that defense counsel's performance "contributed mightily" to this outcome. On our review of the record, we concur with that assessment.

In sum, it is clear to this court that defense counsel's relationship with Dickerson did not create an actual conflict between him and the petitioner. The record substantiates the court's finding that he strenuously advocated on the petitioner's behalf, unburdened by any conflict of interest. Accordingly, there is no merit to this claim.

II

The petitioner next claims that the habeas court improperly concluded that he abandoned his due process claim that he was denied his right to be present at an in-chambers conference. In response, the respondent argues that this court should not review this claim because the habeas court correctly concluded that it was abandoned. We agree with the respondent.[3]

The following facts and procedural history are relevant to this claim. Among the issues raised on direct appeal, the petitioner claimed that he was entitled to a new trial because his constitutional right to be present at all critical stages of the prosecution had been violated. *State* v. *Walker*, supra, 147 Conn. App. 7. The factual basis for this claim was the petitioner's alleged exclusion from an in-chambers discussion regarding defense counsel's possible conflict of interest. Id., 7–8. The petitioner sought review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine. *State* v. *Walker*, supra, 8.

In his direct appeal, this court emphasized that the record revealed "no information as to whether a meeting occurred in chambers or whether there was a discussion in court off the record in the presence or absence of the [petitioner], whether or how counsel alerted the court clerk's office that something needed to be put on the record that morning, or whether the attorneys did something else in the presence or absence of the [petitioner] to alert the court that there was an issue that needed to be put on the record." Id., 15. We thus held that the failure of the petitioner to request a hearing before the trial court to establish a factual predicate for appellate review of the conflict of interest claim rendered the record inadequate for any meaningful review. Id.

In his petition for a writ of habeas corpus, the petitioner alleged in relevant part that "[p]ursuant to *State* v. *Lopez*, 271 Conn. 724, [859 A.2d 898] (2004), the confrontation clause of the sixth, and due process clause of the fifth and fourteenth amendments to the United States constitution, [the petitioner] was denied his constitutional right to be present at a critical stage of his own prosecution, namely an in-chambers conference between defense counsel, the trial court, and the state's attorney, whereby defense counsel's potential conflict of interest in this case was discussed. [The petitioner's] absence thwarted a fair and just hearing in the matter, and his presence had a reasonably substantial relation to the fullness of his opportunity to defend against the charges."

At the conclusion of the habeas trial, the court inquired as to whether the parties would be submitting posttrial briefs or closing oral arguments. The parties agreed to submit posttrial briefs. The petitioner subsequently filed both a posttrial brief and a reply brief with

the habeas court. Those briefs did not address the due process claim alleged in his petition. In its memorandum of decision, the court deemed that claim abandoned, stating: "In his posttrial brief and his posttrial reply brief, the petitioner analyzes and develops only the *Brady* and *Adams*[4] claims related to . . . Dickerson and the alleged conflict of interest thereto. The court, therefore, deems the remaining claims abandoned." (Footnote added.)

It is well settled that "[w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without *substantive* discussion or citation of authorities, it is deemed to be abandoned. . . . These same principles apply to claims raised in the trial court." (Citation omitted; emphasis added; internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 266 Conn. 108, 120, 830 A.2d 1121 (2003).

"[T]he idea of abandonment involves both a factual finding by the trial court and a legal determination that an issue is no longer before the court, [therefore,] we will treat this claim as one of both law and fact. Accordingly, we will accord it plenary review." *Solek* v. *Commissioner of Correction*, 107 Conn. App. 473, 479, 946 A.2d 239, cert. denied, 289 Conn. 902, 957 A.2d 873 (2008).

At his oral argument before this court, the petitioner argued that the failure to address a claim in a posttrial brief does not constitute abandonment and stated that the habeas judge did not explicitly request briefing of all of his claims. It nevertheless "is not the responsibility of the trial judge, without some specific request from a petitioner, to search a record, often, in a habeas case, involving hundreds of pages of transcript, in order to find some basis for relief for a petitioner." Id., 480.

In *Mitchell* v. *Commissioner of Correction*, 156 Conn. App. 402, 408, 114 A.3d 168, cert. denied, 317 Conn. 904, 114 A.3d 1220 (2015), the petitioner included in his amended petition a claim "that his trial counsel failed to adequately and effectively . . . advise [the] petitioner as to the applicable law, prior to the petitioner's decision to be tried to a jury, which prejudiced the petitioner . . . ." (Internal quotation marks omitted.) This court rejected the petitioner's attempt to pursue that claim on appeal, noting that "the present claim was not distinctly raised in the petitioner's lengthy posttrial brief and was not addressed by the court in its decision denying the petition. The petitioner thus abandoned the claim as a result of his failure to brief it before the habeas court." Id.

Although the petitioner in the present case included a due process claim in his petition for a writ of habeas corpus, his posttrial brief and posttrial reply brief did not address the claim. Further, the record does not reflect that the petitioner attempted to amend his posttrial brief or otherwise seek to have the court reconsider its decision not to address the claim.

In light of the petitioner's failure to brief the due process claim, we conclude that the habeas court properly deemed it abandoned. Moreover, the claimed issue on appeal was not ruled upon and decided by the habeas court. It is well settled that "this court is not bound to consider any claimed error unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim." (Internal quotation marks omitted.) Id. We therefore conclude that the habeas court properly determined that the petitioner's due process claim was abandoned.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In his petition, the petitioner also alleged *Brady* violations. See *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). The habeas court's disposition of this claim is not at issue in this appeal.

[2] The petitioner also appears to assert a claim of insufficient inquiry by the trial court into a potential conflict of interest. The petitioner did not raise this issue in his amended petition for a writ of habeas corpus, and, as a result, the habeas court did not address it. "It is well established that [w]e do not entertain claims not raised before the habeas court but raised for the first time on appeal." (Internal quotation marks omitted.) *Hankerson* v. *Commissioner of Correction*, 150 Conn. App. 362, 369, 90 A.3d 368, cert. denied, 314 Conn. 919, 100, A.3d 852 (2014). "[I]t is axiomatic that a petitioner is bound by his petition . . . . While the habeas court has considerable discretion to frame a remedy that is commensurate with the scope of the established constitutional violations . . . it does not have the discretion to look beyond the pleadings and trial evidence to decide claims not raised. . . . Having not raised [an] issue before the habeas court, [a] petitioner is barred from raising it on appeal. . . . This court is not compelled to consider issues neither alleged in the habeas petition nor considered at the habeas proceeding . . . ." (Internal quotation marks omitted.) Id., 367; see also *Hedge* v. *Commissioner of Correction*, 152 Conn. App. 44, 59, 97 A.3d 45 (2014), cert. denied, 321 Conn. 921, 138 A.3d 282 (2016). Accordingly, we decline to review that claim.

[3] The petitioner also argues that the alleged due process violation qualifies as a structural error and is not subject to harmless error analysis. See, e.g., *State* v. *Latour*, 276 Conn. 399, 411, 886 A.2d 404 (2005) ("[Structural error] cases do not involve trial error occurring during the presentation of the case to the jury but involve extrinsic factors not occurring in the courtroom. . . . These cases recognize that violation of some constitutional rights, such as the right to a trial by an impartial jury, may require reversal without regard to the evidence in the particular case.") Because we conclude that the habeas court properly deemed the petitioner's due process claim abandoned, we need not consider that contention. See *State* v. *Apodaca*, 303 Conn. 378, 383, 33 A.3d 224 (2012).

[4] See *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) and *Adams* v. *Commissioner of Correction*, 309 Conn. 359, 71 A.3d 512 (2013).