******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MICHAEL ARONOW *v.* FREEDOM OF
INFORMATION COMMISSION
(AC 41297)

Alvord, Sheldon and Bishop, Js.

*Syllabus*

The plaintiff appealed to this court from the judgment of the trial court
dismissing his appeal from the final decision of the defendant Freedom of
Information Commission. In connection with a whistleblower retaliation
complaint he had filed against his former employer, a health center, the
plaintiff had requested certain records from the health center under the
Freedom of Information Act (act) (§ 1-200 et seq.). After a delay in
receiving the records, the plaintiff filed a complaint in 2014 with the
commission, which was dismissed for lack of jurisdiction on the ground
it had not been timely filed. The plaintiff resubmitted his request for
the records and filed a second complaint with the commission in 2015,
alleging that the health center had violated the act by failing to promptly
provide him with all of the documents he had requested. Thereafter,
the plaintiff appealed from the commission's decision regarding his 2014
complaint to the Superior Court, which dismissed the plaintiff's 2014
complaint as moot on the ground that a hearing in the 2015 complaint, in
which he sought the same records, was pending before the commission.
Subsequently, the commission granted the plaintiff's 2015 complaint in
part and concluded that the health center had violated the act by failing
to comply promptly with the plaintiff's records requests, and the plaintiff
appealed to the Superior Court, which granted in part the commission's
motion to dismiss the plaintiff's appeal as to his first and second claims
and, after further considering the plaintiff's remaining claims, rendered
judgment dismissing the plaintiff's appeal. *Held*:

1. The plaintiff could not prevail on his claim that the trial court improperly
concluded that he was not aggrieved by the commission's decision not
to impose a civil penalty against the health center; although the plaintiff
acknowledged that this court was bound by *Burton* v. *Freedom of Infor-
mation Commission* (161 Conn. App. 654), which addressed the precise
issue raised in this case and held that the plaintiff in that case was
neither classically nor statutorily aggrieved by the commission's decision
not to impose a civil penalty because the decision did not violate a legal
interest of the plaintiff and there was no statutory authority that provided
the plaintiff with standing to appeal to the trial court from the commis-
sion's failure to impose such a penalty, the plaintiff here attempted
to distinguish *Burton*, but his claim was speculative and lacked an
evidentiary foundation, and, therefore, the trial court did not err in
granting the commission's motion to dismiss the plaintiff's civil penalty
claim for lack of standing.

2. The trial court properly dismissed the plaintiff's claim that his 2014 com-
plaint was improperly dismissed on the ground that he was not aggrieved
because the issues raised in that complaint were addressed in his 2015
complaint, the underlying matter in which he ultimately prevailed; con-
trary to the plaintiff's assertion, the record indicated that the commission
did take the relevant facts of his 2014 complaint into consideration when
making its decision that the health center had violated the act, as the
commission not only found that the plaintiff's requests for records were
identical, but it explicitly took administrative notice of the findings of
fact in the 2014 complaint that were relevant to its determination as to
whether the health center had promptly complied, and, therefore, the
plaintiff did not demonstrate how he was aggrieved.

3. The trial court erred in concluding that there was substantial evidence
in the record to support the commission's finding that the plaintiff had
narrowed the scope of his request under the act with respect to para-
graph eleven of his complaint; there was no basis for the commission's
order narrowing the plaintiff's request for records as described in the
commission's final decision, which was inconsistent with the record
and contravened the general policy of openness expressed within the
act, as the record revealed that the plaintiff had requested the health

center to expedite the most time sensitive portion of his request without excluding the remainder of the records requested.

Argued February 6—officially released May 14, 2019

*Procedural History*

Appeal from the decision of the defendant, brought to the Superior Court in the judicial district of New Britain, where the court, *Huddleston, J.*, granted in part the defendant's motion to dismiss; thereafter, the court, *Young, J.*, dismissed the plaintiff's appeal, from which the plaintiff appealed to this court. *Dismissed in part*; r*eversed in part*; *judgment directed.*

*Michael Aronow*, self-represented, the appellant (plaintiff).

*Kathleen K. Ross*, commission counsel, with whom, on the brief, was *Colleen M. Murphy*, general counsel, for the appellee (defendant).

*Opinion*

BISHOP, J. The self-represented plaintiff, Michael Aronow,[1] appeals from the dismissal by the trial court of his appeal from the final decision of the defendant Freedom of Information Commission (commission). Although, after a hearing, the commission concluded that the University of Connecticut Health Center (health center)[2] had violated the Freedom of Information Act (FOIA), General Statutes § 1-200 et seq., in regard to document requests made by the plaintiff, the plaintiff appealed to the trial court from the orders and subordinate findings made by the commission. On appeal from the judgment of the court dismissing his appeal from the commission, the plaintiff claims that the court erred in (1) concluding that he was not aggrieved by the commission's decision to decline to impose a civil penalty against the health center for the FOIA violation, (2) dismissing his claim that the commission improperly dismissed a previous FOIA complaint filed by the plaintiff regarding an earlier document request made to the health center, (3) concluding that there was substantial evidence in the record to support the commission's finding that the plaintiff had narrowed the scope of his FOIA request, and (4) concluding that the commission did not abuse its discretion by affording the health center nine months to comply with its document production order.

We agree with the court's conclusions regarding the plaintiff's first and second claims, and, accordingly, affirm the judgment as to those claims. We conclude, however, that the trial court erred in concluding that there was substantial evidence to support the commission's finding that the plaintiff had narrowed the scope of his original FOIA request in regard to paragraph eleven of the commission's final decision.[3] Accordingly, the judgment is reversed in part, and the case is remanded to the trial court with direction to remand to the commission with direction to order that the health center comply expeditiously with the plaintiff's original request, as narrowed only by paragraph ten of the commission's final decision.

The following facts and procedural history are relevant to our resolution of this appeal. In his brief, the plaintiff alleges that he "is an orthopaedic surgeon who formerly worked for [the health center], against whom he filed a whistleblower retaliation complaint before the Commission on Human Rights and Opportunities' Office of Public Hearings on November 14, 2012 (OPH/WBR No. 2012-208), which [has been] in the damages phase" since he received a favorable decision on liability. Additionally, on March 31, 2012, the plaintiff separated from the health center under disputed circumstances. In his whistleblower complaint against the health center pursuant to General Statutes § 4-61dd, the plaintiff alleged, inter alia, that the health center

took retaliatory actions leading to his separation in response to certain actions he had previously taken that caused him to fall out of favor with health center supervisory personnel, such as his filing of a grievance.[4] These allegations are supported by proceedings from which we take judicial notice.[5]

On August 19, 2013, the plaintiff e-mailed a FOIA request to Scott Wetstone, a medical doctor employed by the health center who acted as its freedom of information (FOI) officer. The request was for production of all e-mails sent or received by Jay R. Lieberman, a medical doctor formerly employed by the health center, from July 1, 2009, to the date of the request; all Microsoft Word and PDF documents created or modified on Dr. Lieberman's health center computer from July 1, 2010, to the date of the request; and a list of all e-mails and documents that fell within this request but were exempt from disclosure, and reasons why they were exempt. On December 13, 2013, Dr. Wetstone e-mailed the plaintiff to notify him that the previous FOIA requests[6] that the plaintiff had made to the health center were "essentially completed" and that he would begin working on the plaintiff's August 19, 2013 request. Dr. Wetstone also suggested in this e-mail that, in light of the number and the nature of the documents he had requested and the fact that the plaintiff had already submitted an extensive discovery request to the health center in a separate matter, the plaintiff should narrow the scope of his request. The plaintiff subsequently agreed to exclude a number of categories of records from the scope of his request.

On March 17, 2014, the plaintiff filed a complaint with the commission; see *Aronow* v. *University of Connecticut Health Center*, Freedom of Information Commission, Docket No. FIC 2014-156 (February 4, 2015) (FIC 2014-156); alleging that he had not received the documents requested, and that there had been no activity regarding his request since December, 2013. On June 30, 2014, while that matter was pending, the plaintiff sent an e-mail to Dr. Wetstone requesting that he expedite the release of certain requested documents that were relevant to the plaintiff's pending Health Center Appeals Committee (committee) appeal.[7] In July, 2014, the plaintiff and Dr. Wetstone exchanged further e-mails regarding the use of a Dropbox[8] account to provide the plaintiff with the documents that he had requested for his committee appeal. After having issues with obtaining the documents from the designated Dropbox folder, the plaintiff acknowledged the receipt of seventeen of the 139 requested documents that Dr. Wetstone had informed the plaintiff he was sending.

On December 16, 2014, over one year after acknowledging that he would begin working on the plaintiff's August 19, 2013 request, and several months after the plaintiff had filed his complaint in FIC 2014-156, Dr.

Wetstone e-mailed the plaintiff the following message: "Per our discussion this morning, you have my personal commitment to get . . . the documents [at issue in FIC 2014-156] no later than the end of March 2015. . . . Later today, I will attempt to find the files that I initially put in the drop box last summer. I can't find them immediately and need to tend to other things right now."

On February 4, 2015, the commission adopted a final decision dismissing the plaintiff's FIC 2014-156 complaint for lack of jurisdiction on the ground that the complaint had not been timely filed pursuant to General Statutes § 1-206 (b) (1).[9] On that same day, the plaintiff resubmitted to Dr. Wetstone the FOIA request that he had originally requested on August 19, 2013. On February 17, 2015, the plaintiff again filed a complaint with the commission; see *Aronow* v. *University of Connecticut Health Center*, Freedom of Information Commission, Docket No. FIC 2015-127 (October 28, 2015) (FIC 2015-127); alleging that the health center had violated the FOIA by failing to promptly provide him with all of the documents he had requested.

Subsequently, on March 17, 2015, the plaintiff filed an appeal from the commission's decision in FIC 2014-156 to the Superior Court. On June 18, 2015, the court dismissed that appeal as moot on the ground that the plaintiff's hearing in FIC 2015-127, in which he sought the same records, was pending before the commission. A hearing on FIC 2015-127 was held before a hearing officer on July 1, 2015. During the hearing, Dr. Wetstone testified regarding the factors that were crucial for determining how long it would take to comply with the plaintiff's particular FOIA request. Dr. Wetstone indicated that, at the time of the hearing, the health center had ten active requests from the plaintiff, nine of which would take a few months to resolve. He indicated, as well, that the plaintiff's February 4, 2015 request was "by far the largest" request he had encountered in his fifteen year history of handling FOIA requests. Additionally, Dr. Wetstone claimed that there was a possibility that multiple FOIA exemptions would apply to the requested documents and that each document needed to be reviewed to determine whether any of those exemptions applied. Dr. Wetstone also asserted that in addition to acting as the FOI officer for the health center, he had multiple other responsibilities that affected how long compliance with the plaintiff's request would take. Finally, Dr. Wetstone testified that many of the individuals employed by the health center who would be required to search for certain requested documents were also responsible for providing direct patient care or for educating medical students.

On October 1, 2015, the hearing officer issued a proposed final decision. On October 8, 2015, the health center provided the plaintiff with some of the docu-

ments he had requested together with a privilege log claiming exemptions as to certain other documents.

On October 28, 2015, the commission adopted the proposed final decision of the hearing officer. The commission found that the health center had violated General Statutes §§ 1-210 (a)[10] and 1-212 (a)[11] by failing to comply promptly with the plaintiff's records requests. In addition, the commission found that the plaintiff's February 4, 2015 request was identical to the August 19, 2013 request that had been at issue in FIC 2014-156, and took administrative notice of certain findings of fact in FIC 2014-156 that were relevant to the determination of whether the health center had violated the promptness requirement of the FOIA. In taking notice of FIC 2014-156, the commission determined that the plaintiff had agreed to exclude broadcast e-mails, journal articles, and research data from his records request (paragraph ten). The commission found, as well, that the plaintiff had asked Dr. Wetstone, on June 30, 2014, to release "whatever material [he had] collected to date as well as the subset of documents that meet [certain enumerated] search criteria . . . between July 1, 2010, and August 14, 2012," which included his name and variations of his name, the words "FOI," "HCAC," "grievance," and "Appeals Committee," and excluded e-mails sent to his own e-mail at the health center (paragraph eleven). (Internal quotation marks omitted.) The commission ordered that the health center promptly comply with the plaintiff's request, as narrowed by paragraphs ten and eleven of its decision, that the health center make a good faith effort to provide the plaintiff with the requested records on a rolling basis, and that the health center work diligently to comply fully within nine months of its decision. The commission also suggested that the plaintiff refrain from making further requests until the health center complied with the commission's order.

On December 9, 2015, the plaintiff appealed from the commission's decision to the Superior Court, claiming that the commission (1) improperly declined to impose civil penalties on the health center, despite the length of the delay and the fact that the commission had found the health center to have violated the promptness requirement of the act in relation to other requests made by the plaintiff; (2) improperly suggested that the plaintiff refrain from making further requests until the commission's order in FIC 2015-127 had been satisfied; (3) improperly allowed the health center nine additional months to comply with the plaintiff's request; (4) improperly found that the plaintiff had narrowed the scope of his request, as stated in paragraph eleven of its decision; (5) erred when it did not provide any mechanism for an in camera review of documents for which the health center claimed exemptions on October 8, 2015, after the proposed decision had been released; and (6) erred when it dismissed his FIC 2014-156 com-

plaint for lack of jurisdiction.

On October 25, 2016, the commission filed a motion to dismiss the plaintiff's appeal, contending that the plaintiff was not aggrieved by the commission's decision in his favor. The commission also moved to strike certain claims for relief if any portion of the appeal survived the motion to dismiss. On May 8, 2017, the court granted the commission's motion to dismiss as to the plaintiff's first and second claims, but denied the motion as to the plaintiff's third and fourth claims. Additionally, the court ordered the parties to brief whether it lacked jurisdiction to consider the plaintiff's fifth claim, and declined to review the commission's inadequately briefed motion to strike as to the plaintiff's sixth claim. In this decision, the court made clear that the commission's October 28, 2015 order was not stayed pending the disposition of the appeal. Following this decision, the plaintiff alleged that the health center notified him that it would begin complying with his request, as narrowed pursuant to the commission's order. The plaintiff also alleged that in June, 2017, the health center had sent him two compact discs (CDs) containing requested documents in partial compliance with the order.[12]

On January 5, 2018, after further considering the plaintiff's third, fourth, fifth, and sixth claims, the court dismissed the plaintiff's appeal. Specifically, the court concluded that the commission had not abused its discretion in giving the health center nine months to comply with the plaintiff's records request because there was substantial evidence before the commission to support the reasonableness of its decision to order a rolling out of information over a nine month period of time. The court found, as well, that the plaintiff had agreed to narrow his request, as described in paragraph eleven of the commission's decision. The court concluded, as well, that because the commission did not have the opportunity to consider whether there should have been an in camera review of the allegedly exempt documents, the plaintiff had not exhausted his administrative remedies, and, thus, that claim was not ripe for the court's consideration.

Finally, the court addressed the plaintiff's claim regarding his FIC 2014-156 complaint, which involved his earlier records request to the health center. The court understood this claim to be an assertion that the plaintiff had relied on representations made by the commission that his FIC 2014-156 complaint would be considered at the hearing in FIC 2015-127 and that, because of that representation, he did not timely appeal the court's disposition of his appeal with regard to his FIC 2014-156 complaint. Specifically, the plaintiff's claim was understood to be an assertion that he was aggrieved by the dismissal of FIC 2014-156 because the issues in that earlier records request were not addressed

in FIC 2015-127 and the plaintiff had not received the records he had sought in FIC 2014-156, which were the same records as those had had requested in FIC 2015-127, and that the commission should have considered the health center's delay in compliance as being substantially longer than it had found in its disposition of FIC 2015-127. The court concluded that the plaintiff's claim was without merit after finding that the issues that were the basis of the FIC 2014-156 complaint were, in fact, addressed by the commission in FIC 2015-127. The court also concluded that there was no evidence in the record that the commission's finding of a shorter time period of delay was an abuse of discretion or affected the outcome of the proceeding. This appeal followed.[13] Additional facts will be set forth as necessary.

I

We first address the plaintiff's claim that the court erred in concluding that he was not aggrieved by the commission's decision not to impose a civil penalty against the health center. Specifically, the plaintiff claims that the court's granting of the commission's motion to dismiss this claim for lack of standing was improper because he was aggrieved by the health center's noncompliance with his FOIA requests and, therefore, had a direct interest in his attempt to have the commission impose a civil penalty on the health center. We are not persuaded.

We begin by setting forth the legal principles regarding motions to dismiss and standing. Because this claim "arises from a motion to dismiss, the question is whether the pleadings, if presumed true and construed in favor of the plaintiff, set forth sufficient facts to establish that the plaintiff had standing. . . . That question is one of law, over which our review is plenary." (Citation omitted.) *Burton* v. *Freedom of Information Commission*, 161 Conn. App. 654, 658, 129 A.3d 721 (2015), cert. denied, 321 Conn. 901, 136 A.3d 642 (2016). "It is a basic principle of law that a plaintiff must have standing for the court to have jurisdiction. Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has . . . some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of [a] direct injury he has

suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy.'' (Citations omitted; internal quotation marks omitted.) *Rose* v. *Freedom of Information Commission*, 221 Conn. 217, 223–24, 602 A.2d 1019 (1992).

''Standing may derive from either classical or statutory aggrievement. . . . Aggrievement is also expressly required by the statutes that govern a FOIA appeal. See General Statutes § 1-206 (d) ('[a]ny party aggrieved by the decision of said commission may appeal therefrom, in accordance with the provisions of section 4-183' . . .); General Statutes § 4-183 (a) ('[a] person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section' . . .).'' (Citation omitted; emphasis omitted.) *Burton* v. *Freedom of Information Commission*, supra, 161 Conn. App. 659.

In *Burton*, this court addressed the precise issue raised in the case at hand, namely, whether a plaintiff had standing to challenge on appeal the commission's failure to impose a civil penalty as a remedy once the commission determined that a FOIA violation had occurred. See id., 662–67. This court concluded that the plaintiff in *Burton* was neither classically nor statutorily aggrieved by the commission's decision not to impose a civil penalty because the decision did not violate a legal interest of the plaintiff and there was no statutory authority that provided the plaintiff with standing to appeal to the trial court from the commission's failure to impose such a penalty. See id., 665–67. In reaching this conclusion, the panel in *Burton* relied in part on the language of § 1-206 (b) (2) to distinguish between forms of relief that a plaintiff could seek, such as injunctions, and discretionary tools that the commission may utilize, such as civil penalties. Id., 662–65.

The plaintiff acknowledges that *Burton* was binding on the trial court, but attempts to distinguish *Burton* from the present case by arguing that he was aggrieved by the commission's decision not to impose a civil penalty against the health center because that decision led to a subsequent denial of his right to receive records from the health center promptly pursuant to §§ 1-210 (a) and 1-212 (a). In making this claim, the plaintiff appears to argue that the commission's imposition of a civil penalty to enforce compliance with its order would have deterred the health center from committing further FOIA violations. This argument, however, is speculative, as it lacks any evidentiary foundation. In short, there is no evidence in the record to support the plaintiff's contention that *Burton* is distinguishable from the present matter. Accordingly, we conclude that the court did not err in granting the commission's

motion to dismiss the plaintiff's civil penalty claim for lack of standing.

## II

The plaintiff next claims that the court erred in dismissing his claim that his FIC 2014-156 complaint was improperly dismissed on the basis that he was not aggrieved because the issues raised in that complaint were addressed in FIC 2015-127, the underlying matter in which he ultimately prevailed. The plaintiff claims that he did not appeal from the court's decision regarding his FIC 2014-156 complaint, because he relied to his detriment on the commission's guarantee during a hearing on that matter[14] that it would take his FIC 2014-156 complaint into consideration in making its decision in regard to his later FIC 2015-127 complaint. The plaintiff asserts that he subsequently was aggrieved by the commission's failure in FIC 2015-127 to consider all of the relevant records from FIC 2014-156, as well as its decision in FIC 2015-127 to consider the February 4, 2015 request date in determining whether the health center had promptly complied, rather than the August 19, 2013 request date. We agree with the commission that the court properly dismissed this claim.

"Our resolution of this issue is guided by the limited scope of judicial review afforded by the Uniform Administrative Procedure Act; General Statutes § 4-166 et seq.; to the determinations made by an administrative agency. [W]e must decide, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. . . . Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Citation omitted; emphasis omitted; footnote omitted; internal quotation marks omitted.) *Perkins* v. *Freedom of Information Commission*, 228 Conn. 158, 164–65, 635 A.2d 783 (1993). "Neither this court nor the trial court may retry the case or substitute its own judgment for that of the [administrative agency]." (Internal quotation marks omitted.) *Ottochian* v. *Freedom of Information Commission*, 221 Conn. 393, 397, 604 A.2d 351 (1992).

The plaintiff's argument appears to be that, because of representations made to him by counsel for the commission during the hearing concerning his appeal of FIC 2014-156, he did not appeal the court's disposition regarding his FIC 2014-156 complaint, and, as a result, the commission should be equitably estopped from later asserting any issues arising from his failure to appeal. We, however, agree with the court that the record reveals that the plaintiff's argument lacks merit.

Contrary to the plaintiff's assertion, the record indicates that the commission did take the relevant facts of FIC 2014-156 into consideration when making its decision that the health center had violated the FOIA. Not only did the commission find that the February 4, 2015 request was identical to the August 19, 2013 request, but, during the hearing in FIC 2015-127, the commission explicitly took administrative notice of the findings of fact in FIC 2014-156 that were relevant to its determination as to whether the health center had promptly complied. Because the commission actually did take the relevant facts of FIC 2014-156 into consideration in making its decision in FIC 2015-127, and the plaintiff's February 4, 2015 request is identical to his August 19, 2013 request, the plaintiff has not demonstrated how he was aggrieved by the statements of the commission's counsel or by the commission's reliance on the later request date in making its decision. Therefore, the plaintiff's claim is without merit, and, accordingly, we conclude that the court properly dismissed it.

### III

The plaintiff next claims that the court erred in concluding that there was substantial evidence in the record to support the commission's finding that the plaintiff had narrowed the scope of his FOIA request, as described in paragraph eleven of the commission's final decision. Specifically, the plaintiff claims that he had not agreed to permanently narrow his FOIA request to limit it to only the records described in an e-mail communication with Dr. Wetstone, the health center's FOI officer. Rather, the plaintiff claims that he had requested the health center to expedite the most time sensitive portion of his request without excluding the remainder of the records requested. The record supports the plaintiff's claim in this regard.

The record reveals the following additional facts that are relevant to this claim. After receiving the plaintiff's modified FOIA request, Dr. Wetstone e-mailed the plaintiff the following on December 13, 2013: "As I have already described, this request is likely to take a considerable amount of time to complete given the number [of] documents involved, the nature of the documents . . . and my office's capacity to review these documents . . . . To any degree that you are willing to narrow the scope of this [FOIA] request, it might help expedite you receiving the documents you are seeking."

The plaintiff responded as follows: "As I stated before you may exempt [b]roadcast news [e-mails], journal articles, and research data. Since I do not know what else is in [Dr.] Lieberman's computer and [e-mail] I am welcome to other suggestions. If you are able to send me a list of documents on the computers and or [e-mails] I would be happy to omit the ones I think are irrelevant." The plaintiff subsequently filed his complaint in FIC

2014-156 on March 17, 2014, alleging that the health center had failed to provide any of the requested documents.

On June 30, 2014, the plaintiff sent the following e-mail to Dr. Wetstone: "Quite some time has passed since [my] FOIA request was made. As you are aware from one of your other responsibilities at the Health Center I have an appeal due on or about July 21, 2014 with respect to my HCAC grievance against Dr. Lieberman. There is likely material extremely relevant to my . . . appeal in [my] FOIA request that I would hope to receive by July 14, 2014 if possible so I have time to evaluate the information and incorporate it into my appeal. Therefore, I am asking you to consider releasing to me by July 14, 2014 whatever material you have collected to date [as] well as the subset of documents that meet the following criteria: ('Mike' OR 'Aronow' or 'ARANOW' or 'Arano' OR 'HCAC' OR 'grievance' or 'Appeals Committee' OR 'FOI' OR 'FOIA' OR 'Freedom of Information') between July 1, 2010 and August 14, 2012 and excluding [e-mails] directly sent or [cc'd] to Aronow@nso.uchc.edu."

As previously discussed, on February 4, 2015, the same date that the plaintiff's complaint in FIC 2014-156 was dismissed, the plaintiff submitted a FOIA request identical to his August 19, 2013 request. On February 17, 2015, the plaintiff filed his complaint in FIC 2015-127. During the hearing in that matter, Dr. Wetstone testified that he had negotiated with the plaintiff a "dramatic reduction" to his original August 19, 2013 request, but that the plaintiff's February 4, 2015 request restored the original, prenegotiation request. Other than Dr. Wetstone's testimony in this regard, there was no documentary evidence reflecting that the plaintiff had narrowed the scope of his records request. Moreover, the plaintiff testified that there was an "implicit assumption . . . that the same restrictions [regarding his original request] would be in place [regarding his February 4, 2015 request]" and that he "was always willing to work with Dr. Wetstone to narrow [his request] in any way before, and the implicit assumption was that . . . [Dr. Wetstone] would give [him] the documents he already had . . . ." The hearing officer also asked the plaintiff if he was still willing to reduce the number of documents he was requesting, to which the plaintiff replied in the affirmative.

As with the plaintiff's second claim, our review of this claim is limited to "whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion." (Internal quotation marks omitted.) *Perkins* v. *Freedom of Information Commission*, supra, 228 Conn. 164. Also in our review, we are mindful that "[t]he [FOIA] expresses a strong legislative policy in favor of the open conduct of government and free public access to government records." *Wilson* v. *Free-*

*dom of Information Commission*, 181 Conn. 324, 328, 435 A.2d 353 (1980); see also *Board of Education* v. *Freedom of Information Commission*, 208 Conn. 442, 450, 545 A.2d 1064 (1988) ("general policy of openness expressed in the FOIA legislation"); *Tompkins* v. *Freedom of Information Commission*, 136 Conn. App. 496, 507, 46 A.3d 291 (2012) ("We note initially that public policy favors the disclosure of public records. . . . [A]ny exception to that rule [therefore] will be narrowly construed in light of the general policy of openness expressed in the [FOIA] . . . ." [Citation omitted; internal quotation marks omitted.]). In addition, "[t]he burden of proving the applicability of an exception to the FOIA rests upon the party claiming it." *Rose* v. *Freedom of Information Commission*, supra, 221 Conn. 232.

The present case rests on the interpretation of the plaintiff's June 30, 2014 e-mail and his subsequent representations to the health center and the commission. The commission argues that it reasonably interpreted the June 30, 2014 e-mail as an agreement by the plaintiff to narrow the scope of his request to a particular subset of documents, and that there is no evidence in the record to support the plaintiff's assertion that he did not intend to permanently narrow his request to that subset. The record does not support that conclusion.

In the June 30, 2014 e-mail, the plaintiff clearly stated that he needed material that was relevant to his pending committee appeal. He also asked Dr. Wetstone to forward any documents that had been collected up to that date, including documents that were relevant to his committee appeal. The plaintiff also explicitly excluded e-mails that had been sent to his own e-mail address at the health center. The plaintiff, however, did not state in the e-mail that he was in any way limiting his original August 19, 2013 request, or that he was excluding the remainder of the documents related to that request. The only reasonable reading of the plaintiff's e-mail is that he was attempting to expedite the receipt of certain documents for his upcoming committee appeal. Nowhere in the plaintiff's response to Dr. Wetstone did he evince an intent to permanently alter the scope of his pending FOIA request.

Moreover, the commission's view that the June 30, 2014 e-mail constituted an agreement by the plaintiff to narrow the scope of his request appears to conflate that e-mail with the plaintiff's December 16, 2013 e-mail in which he explicitly agreed to exclude "broadcast [e-mails], journal articles, and research data" from his original August 19, 2013 request.[15] (Internal quotation marks omitted.) The plaintiff does not dispute that he agreed to exclude these documents, as well as the e-mails sent to his e-mail address at the health center. The plaintiff's testimony before the commission reflects his assumption that these were the same exclusions that would be in place in his February 4, 2015 request,

and that this request would otherwise remain the same as his original request.

Not only is the commission's order narrowing the plaintiff's request as described in paragraph eleven of its final decision inconsistent with the record, but it also contravenes the general policy of openness expressed within the FOIA. See *Ottochian* v. *Freedom of Information Commission*, supra, 221 Conn. 398; *Tompkins* v. *Freedom of Information Commission*, supra, 136 Conn. App. 507. Our application of this general policy is not hindered where neither the health center nor the commission has asserted that the restrictions enunciated in paragraph eleven were due to exemptions pursuant to § 1-210 (b). In sum, we conclude that there was no basis for the commission's order narrowing the plaintiff's request, as described in paragraph eleven. Accordingly, we conclude that the trial court erred in concluding that there was substantial evidence in the record to support the commission's finding that the plaintiff had narrowed the scope of his request with respect to paragraph eleven.[16]

The judgment is reversed in part with regard to the narrowing in scope of the plaintiff's document request and the case is remanded to the trial court with direction to remand to the commission to order that the health center comply with the plaintiff's original FOIA request, as narrowed only by paragraph ten of its final decision, in an expeditious manner. The portion of this appeal in regard to the plaintiff's fourth claim is dismissed, and the judgment is affirmed with respect to the plaintiff's remaining claims.

In this opinion the other judges concurred.

[1] The plaintiff also represented himself before the trial court and the commission.

[2] The health center and its freedom of information officer are not parties to this action.

[3] The record reflects that the commission's October 28, 2015 order afforded the health center an additional nine months to comply with the plaintiff's request as narrowed by paragraphs ten and eleven of its decision. Because we conclude that the commission incorrectly determined that the plaintiff had voluntarily narrowed his document request and we remand with direction that the commission formulate new orders for production, we need not reach the plaintiff's fourth claim that the commission gave the health center an unreasonable amount of time to comply with its document production order. In sum, as a consequence of this opinion, the issue of whether the commission abused its discretion by affording the health center an unreasonably long period of time to comply is moot. See, e.g., *Angersola* v. *Radiologic Associates of Middletown, P.C.*, 330 Conn. 251, 256 n.4, 193 A.3d 520 (2018); *Fisher* v. *Big Y Foods, Inc.*, 298 Conn. 414, 416 n.2, 3 A.3d 919 (2010).

[4] While in the employ of the health center, the plaintiff filed a grievance with the Health Center Appeals Committee (committee) against his department head, in which he accused the department head of various acts of misconduct directed against the plaintiff and others. Once the committee heard the grievance, it forwarded its report to the Office of the Executive Vice President of Academic Affairs at the University of Connecticut. That report, in turn, was reviewed by Philip Austin, president emeritus of the university. Austin subsequently wrote a one page report on the matter. After the plaintiff's request for copies of the report was denied, he filed a complaint with the commission which, in turn, ordered that the copies be disseminated to him. On appeal, our Supreme Court affirmed the commission's decision.

See *Lieberman* v. *Aronow*, 319 Conn 748, 751–53, 127 A.3d. 970 (2015).

[5] By order dated February 14, 2018, a hearing officer from the Office of Public Hearings issued a decision, after a bifurcated hearing, in favor of the plaintiff on the issues of liability and continued the hearing to a subsequent date for a hearing on damages. As of the date of oral argument in this appeal, the damages hearing by the Office of Public Hearings had not taken place. We take judicial notice of these proceedings in the Office of Public Hearings as permitted by law. See *Cannatelli* v. *Statewide Grievance Committee*, 186 Conn. App. 135, 136 n.1, 198 A.3d 716 (2018) (taking judicial notice of disciplinary proceeding despite fact that documents in proceeding not part of underlying record), cert. denied, 331 Conn. 903, 202 A. 3d 374 (2019).

[6] The plaintiff had made a number of additional FOIA requests to the health center. Specifically, in the three years from the plaintiff's departure from the health center until the hearing in *Aronow* v. *University of Connecticut Health Center*, Freedom of Information Commission, Docket No. FIC 2015-127 (October 28, 2015), Dr. Wetstone testified that the plaintiff had made twenty-seven requests to the health center.

[7] See footnote 4 of this opinion.

[8] Dropbox is a "web-based file hosting service that uses cloud storage to enable users to store and share files with others across the Internet using file synchronization. When files are uploaded to Dropbox by a user, they automatically sync with another computer selected by the user, meaning that the files are transferred from one computer to another." (Internal quotation marks omitted.) *Frisco Medical Center*, *L.L.P.* v. *Bledsoe*, 147 F. Supp. 3d 646, 652 (E.D. Tex. 2015).

[9] General Statutes § 1-206 (b) (1) provides in relevant part that "[a]ny person denied the right to inspect or copy records under section 1-210 . . . or denied any other right conferred by the Freedom of Information Act may appeal therefrom to the Freedom of Information Commission, by filing a notice of appeal with said commission. A notice of appeal shall be filed not later than thirty days after such denial . . . ." In the present case, the commission concluded that the plaintiff's March 17, 2014 complaint "was more than sixty days past the denial of the [plaintiff]'s request that is deemed to have occurred on December 20, 2013 . . . ."

[10] General Statutes § 1-210 (a) provides in relevant part that "[e]xcept as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency . . . shall be public records and every person shall have the right to (1) inspect such records promptly during regular office or business hours, (2) copy such records in accordance with subsection (g) of section 1-212, or (3) receive a copy of such records in accordance with section 1-212. . . ."

[11] General Statutes § 1-212 (a) provides in relevant part that "[a]ny person applying in writing shall receive, promptly upon request, a plain, facsimile, electronic or certified copy of any public record. The type of copy provided shall be within the discretion of the public agency, except (1) the agency shall provide a certified copy whenever requested, and (2) if the applicant does not have access to a computer or facsimile machine, the public agency shall not send the applicant an electronic or facsimile copy. . . ."

[12] During oral argument, the plaintiff further represented to this court that, since receiving the CDs in June, 2017, he has not received any additional documents from the health center. He also is uncertain of how many of the documents falling within the scope of the narrowed request he did not receive in the nine months following the court's order.

[13] On appeal, although the plaintiff notes in his appellate brief the commission's suggestion that he refrain from filing additional FOIA requests until the health center complied with the commission's order, the plaintiff does not appear to argue that this suggestion was improper. In fact, the plaintiff concedes in his brief that the court reasonably concluded that the commission's order that he refrain from further requests until the request at issue is satisfied was nonbinding. Because the plaintiff does not appear to challenge the trial court's determination in this regard, we need not address this issue further.

Additionally, in his brief, the plaintiff's only references to his request for an in camera review of documents that the health center claimed to be exempt from disclosure consist of a summary of the trial court's decision and a statement of his belief that he will need to file a new FOIA request for an in camera review of the contested records. Lacking any analysis or argumentation, we deem this claim to be abandoned. See *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 266 Conn. 108, 120, 830 A.2d 1121 (2003) ("[W]e are not required to review issues that have

been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." [Internal quotation marks omitted.]); *Walker* v. *Commissioner of Correction*, 176 Conn. App. 843, 856, 171 A.3d 525 (2017) (same).

[14] In making this argument, the plaintiff relies on the following exchange that occurred between the court and the commission's counsel during the hearing:

"[The Court]: Right. How about [the plaintiff's] claim that the 2014 [case] is different than the 2015 case because it's more and more likely to result in an order of sanctions against the health center?

"[The Commission's Counsel]: Well—and I understand [the plaintiff]'s thinking in that regard but he is able when his case comes up, he is able to explain that it is a renewed complaint and the hearing officer who makes a recommendation to the commission will consider that. *It won't just look at the complaint in isolation.*

"[The Plaintiff] will be able to present evidence that this is, in fact, a renewed complaint that he had to file in order to come within the jurisdiction of the commission.

"[The Court]: But his claim is that the length of time that it's taken the health center to supply the records is longer in the 2014 case than in the 2015 case and therefore he is more likely to obtain sanctions.

"[The Commission's Counsel]: And again, he would be able to present that evidence at the hearing that this is a renewed complaint and his original request was made over, I think it was [seventeen] months ago and the hearing officer and the commission will take that into consideration. *It won't view this new complaint, renewed complaint in isolation.* [*The plaintiff*] *will be able to present evidence that it was actually a renewed complaint.*" (Emphasis added.)

[15] This is the same exclusion recognized by the commission in paragraph ten of its final decision in FIC 2015-127.

[16] Although we conclude that our resolution of the plaintiff's third claim renders his fourth claim moot; see footnote 3 of this opinion; on the basis of our review of the record, we do not understand the reasonableness of the commission's decision to afford the health center an additional nine months to comply with the plaintiff's records requests which, by then, were already long-standing, especially in light of the explicit promise made by Dr. Wetstone to complete the plaintiff's request by March, 2015. We also note the plaintiff's unrebutted assertion that the health center had failed to fully comply with the commission's October 28, 2015 order by the nine month deadline, which was not stayed following the trial court's May 8, 2017 decision on the commission's motion to dismiss. Under these circumstances, on remand we encourage the commission to put in place a procedure to adequately monitor and ensure the health center's compliance with the plaintiff's long-standing records requests.